**Drew W. COTTON, Respondent,**

v.

**Arthur Ray PYLE, Appellant,**

and

**Lee-Way Motor Freight, Inc., a Corporation, Respondent.**

**No. 51427.**

Supreme Court of Missouri,
Division No. 2.

March 14, 1966.

William C. Bland, Springfield, Edward V. Sweeney, Monett, for plaintiff-respondent, Drew W. Cotton.

Daniel, Clampett, Ellis, Rittershouse & Dalton, B. H. Clampett, Ransom A. Ellis, Jr., Donald W. Jones, Springfield, Tom B. Hembree, Joplin, for defendant-appellant, Arthur Ray Pyle.

Glenn A. Burkart, Robert W. Schroff, Mann, Walter, Burkart, Weathers & Schroff, Springfield, for respondent, Lee-Way Motor Freight, Inc.

PRITCHARD, Commissioner.

Two points are presented by appellant, Pyle, by which he seeks reversal and new trial of respondent Cotton's claim for per-

sonal injuries, and on his own cross-claim for personal injuries against respondent Lee-Way Motor Freight, Inc. The first point is that the trial court erred in refusing to declare a mistrial because of a claimed prejudicial question asked Police Officer Wells upon cross-examination by counsel for Lee-Way: "Q. (By Mr. Burkart) You issued a ticket to Mr. Pyle, didn't you?" The second point is that the trial court erred in refusing to give appellant's Instruction "A", relating to contributory negligence of respondent Cotton, a passenger in appellant's automobile at the time of the occurrence in question.

Judgment upon verdicts was for respondent Cotton and against appellant for $11,-000; and for respondent Lee-Way on appellant's $51,900 cross-claim against it. The amount in dispute being more than $15,000, we have appellate jurisdiction. Const.Mo. 1945, Art. V, § 3, V.A.M.S.

The sufficiency of the evidence to support submission of the case to the jury on behalf of any party is not contested. A brief statement of the facts will therefore suffice. On November 12, 1962, at about 4:45 a. m., while it was still dark, appellant was driving his automobile south on Grant Street in Springfield, Missouri. With him were two passengers, Polston Bolton who was sitting in the center of the front seat, and respondent Cotton who was sitting on the right side of the front seat. The three were enroute to Bull Shoals Lake for fishing. Appellant approached the intersection of Chestnut Street Trafficway with Grant Street, which was protected in its center by a hanging signal, which flashed red to the north and south and yellow to the east and west. Grant Street was about 37 feet wide and Chestnut Street Trafficway was about 35 feet wide. On his approach, appellant was first driving about 25 miles per hour and then reduced his speed to about 15 to 20 miles per hour, and on arriving at the intersection he stopped two or three feet north of the curb line and looked both ways, first to the east and then to the west. Al-

though appellant did not depend upon his two passengers altogether, he asked them if everything was clear, to which one or both of them answered "Yes". Appellant saw no vehicles or lights approaching on Chestnut Street Trafficway, so he started across the intersection. As appellant reached a point three-fourths of the distance across the intersection, Lee-Way's tractor with a tandem-wheel van 39 feet long coming from the west collided with appellant's automobile. The driver of Lee-Way's tractor-trailer and Mr. Bolton were killed, and both appellant and respondent Cotton were injured.

Immediately after the asking of the above cross-examination question of Officer Wells, who was the first witness, the following occurred:

"MR. ELLIS: I'm going to ask for a mistrial at this point, Your Honor. That is clearly prejudicial to this defendant and inadmissible in evidence.

THE COURT: It is inadmissible, that's for sure.

MR. ELLIS: It is highly prejudicial.

THE COURT: Well, I'm not going to declare a mistrial, but don't mention it any more.

MR. ELLIS: Just a moment. I'd like to ask the Court for a mistrial in view of the prejudicial statement which was made and no comment by the Court at this point could possibly correct the damage which has been done here and our only remedy would be a mistrial.

THE COURT: I'm afraid you are right. I don't think that anything I'd say to the jury would remove it from their minds.

MR. BURKART: I will withdraw the question if the Court thinks it is improper.

THE COURT: That would simply re-emphasize the thing to the jury.

MR. SWEENEY: On behalf of the plaintiff I would ask the Court to admonish the jury to disregard that as being highly improper and to reprimand counsel for what he knows is a flagrant abuse of the rules of evidence.

THE COURT: Do you want me to admonish the jury? I am not going to declare a mistrial.

MR. ELLIS: Well, Your Honor, admonishing the jury is not going to solve the problem at this point. If your Honor decides to go ahead, the least that could be done to cure the error that has been committed here would be to admonish the jury to disregard it completely and that they will not take that statement into consideration whatsoever, that it is improper, but I cannot agree that any remedy, other than a mistrial, would be appropriate.

THE COURT: I'm afraid you are right. I will let the case go ahead and we will see where we wind up. If you want me to admonish the jury, I will do it.

MR. ELLIS: I am not going to suggest that you do it. I'm standing on my motion for a mistrial.

THE COURT: Are you suggesting that I do that?

MR. SWEENEY: I would like to suggest it to the Court.

THE COURT: Very well.

(Whereupon the proceedings returned to open court)

THE COURT: (To the jury) Ladies and gentlemen of the jury, I want to admonish you as seriously as I can that you are to utterly disregard the question, the last question asked by Mr. Burkart which was 'You issued a ticket to Mr. Pyle, didn't you?'—that has nothing to do with this case, it has no bearing on the case and, in all kindness, I wish to say that it should not have been asked, but these things just happen. I'm not criticizing Mr. Burkart except that the question should not have been asked and it has nothing to do with the case. I am instructing you as strongly as I may that you are to disregard the question. There will be no answer. Do you understand that? All right."

■ Appellant cites a number of cases holding that questions of this type are improper, to which we agree. Respondent, Lee-Way, concedes that the question should not have been asked. The issue is, then, whether there was such prejudice that the effect of the question, tending to suggest that appellant was at fault on the issue of his liability, could not be removed by the court's instruction to the jury to utterly disregard it.

The numerous cases cited and relied upon by appellant involve different factual situations than this case where there was but the single, improper question, and where the trial court promptly and strongly admonished the jury to disregard the unanswered question and that it had nothing to do with the case. In State v. Rose, 178 Mo. 25, 76 S.W. 1003, 1006, counsel for the state called as a witness a justice of peace, and asked him in the presence of the jury, "I wish you would turn to your docket, 'State of Missouri vs. John Rose, for larceny.' " The offense, under the evidence, was minor—stealing property worth less than $3.00 from the person of another in the nighttime, which carried a penalty upon conviction of 3 months imprisonment in the county jail to 7 years imprisonment in the penitentiary. The court held that the punishment assessed, 2 years imprisonment, under the evidence, at least tended to indicate that the prejudices of the jury were so aroused (by reason of the very damaging statement of counsel) as to interfere with a calm and dispassionate consideration of the evidence alone pertinent to the issues before them. It is significant in

the Rose case that "Nothing was said to the state's counsel or to the jury to destroy any injurious effects of such a statement." (Loc. cit. 76 S.W. 1006.) In Harris v. Williams, Mo.App., 363 S.W.2d 51, 53, plaintiff was cross-examined: "Q. Do you recall a little matter of being arrested?" Although the objection was sustained the court took no action on the request that the jury be instructed to disregard the question, and the request for mistrial was denied. In Myers v. Moffett, Mo., 312 S.W.2d 59, there were continued, persistent improper questions (a cumulative, prejudicial effect), asking conclusions of the witness, after the court had sustained the objections and told counsel outside the hearing of the jury to refrain from asking such questions. In Holden v. Berberich, 351 Mo. 995, 174 S.W. 2d 791, 149 A.L.R. 929, the trial court upon motion for new trial specified as the ground for his order of new trial (affirmed on appeal) an improper question to and answer by plaintiff's principal witness that he had been indicted in connection with the Holden death on a charge of driving while intoxicated. So far as appears from the opinion, there was no request made that the jury be instructed to disregard the improper matter.

■ There are, of course, circumstances in which it is clear that an attempt to remove by instruction to the jury the prejudicial effect of incompetent testimony, or questions improperly put by counsel, would be ineffective to remedy the error. Spears v. Schantz, 241 Mo.App. 879, 246 S.W.2d 399, 410 [14]. Much is left to the discretion of the trial court in determining whether corrective action is appropriate and sufficient, Hoffman v. Illinois Terminal Railroad Company, Mo.App., 274 S.W. 2d 591, 595 [9], and the trial court is in a much better position to determine whether a verdict has been obtained through "sharp practice," Hollenbeck v. Missouri Pac. Ry. Co., 141 Mo. 97, 38 S.W. 723 (affirmed, Banc, 41 S.W. 887). See also Stutte v. Brodtrick, Mo., 259 S.W.2d 820, 825 [4–9].

In view of the testimony of eyewitness, Keith Southard, that Lee-Way's truck was clearly visible as it approached the intersection, and that of appellant that he looked (but did not see the truck), there was ample evidence to support the verdict without any consideration by the jury of counsel's improper question to Officer Wells. Compare Cammarata v. Payton, Mo., 316 S.W.2d 474, 480, where it was said, "While liability and the plaintiff's right to recover [were] dependent for the most part on the jury's persuasion as to credibility, this was a simple case involving simple issues and in point of fact the question of negligence was not so close as to leave doubt as to the propriety of the jury's final verdict or to leave the lurking suspicion that the jury may have been unduly inflamed and influenced by improper extraneous evidence and argument." The fact that here the trial court first remarked that anything he would say to the jury would not remove the improper question from their minds is not binding, and immediately after conference with counsel he did take prompt, definite and decisive action in admonishing the jury to disregard the matter, that "the question should not have been asked and it has nothing to do with the case." Under the evidence and circumstances that the matter arose and was disposed of during the trial, and that it was considered by the trial court on motion for new trial, we do not perceive prejudicial error. Appellant's first point is overruled.

The refused contributory negligence instruction "A" submitted that if the jury found that respondent Cotton failed to see the approaching eastbound tractor-trailer, and failed to warn appellant of its approach, that he could have seen it and could have warned appellant of its approach, when he still had enough time so that he could have avoided the collision by either stopping, slackening his speed, or swerving, and that in failing to see the approaching tractor-trailer unit, and failing to warn appellant, respondent Cotton failed to exercise ordinary care for his own safety and was

thereby negligent, he was not entitled to recover. Respondent Cotton testified: That appellant brought his car to a stop at the intersection before starting across; that he (Cotton) looked to the east and west, and that was the last thing he remembered— he didn't see anything because he didn't remember anything—"My memory just stops there, it stops." Appellant testified that he could not say for sure who it was in the car who said "Yes" in answer to his question, "Is everything clear?" Appellant was looking himself, and he did not depend upon his passengers altogether because he was looking—he was doing the driving. He did not know whether it was Cotton who said "Yes".

■ The rule concerning the duty of a guest passenger in this state is well stated in the case of Happy v. Blanton, Mo., 303 S.W.2d 633, 638 [8] : "A guest passenger in an automobile is required to exercise only ordinary care for his own safety. State ex rel. Alton Railroad Co. v. Shain, 346 Mo. 681, 143 S.W.2d 233, 238; Toburen v. Carter, Mo.Sup., 273 S.W.2d 161; Ketcham v. Thomas, Mo.Sup., 283 S.W.2d 642. A guest may not entrust his safety absolutely to the driver regardless of the impending danger or apparent lack of ordinary caution on the part of the driver, but the guest is not required to exercise the same vigilance as the driver, nor does he have the same obligation to look for danger. Smith v. St. Louis-San Francisco Railway Co., 321 Mo. 105, 9 S.W.2d 939; Fann v. Farmer, Mo.App., 289 S.W.2d 144, 147. 'In the absence of visible lack of caution of the driver or known imminence of danger, a guest may ordinarily rely upon a driver who has exclusive control of the vehicle.' Toburen v. Carter, supra [273 S.W.2d 164]; Ketcham v. Thomas, supra; Fann v. Farmer, supra."

■ In this case there was no evidence of any lack of care or vigilance upon the part of appellant in stopping two or three feet north of the curb line on Grant Street in obedience to the flashing red signal for traffic thereon. There is nothing about the facts or circumstances surrounding the operation of appellant's car which would charge respondent Cotton with knowledge that anything was amiss. On the contrary, the evidence shows that prior to starting up and driving into the intersection, appellant was exercising care commensurate with his own safety and the safety of his passengers. There is no evidence that respondent Cotton saw the approaching Lee-Way truck so as to place upon him the duty timely to warn appellant of its presence. Respondent Cotton, as a guest passenger, was under no duty to maintain a constant lookout or to warn. Jenkins v. Wabash Railroad Company, Mo., 322 S.W. 2d 788, 798 [14, 15]. There was here no evidence that had respondent Cotton actually seen the approaching Lee-Way truck, that a warning to appellant would have effectively prevented the collision. Respondent Cotton's conduct must be judged primarily with reference to his driver's conduct and his own ability to control the driver. Fann v. Farmer, Mo.App., 289 S. W.2d 144; Adair v. Cloud, Mo., 354 S.W. 2d 866, 870. There was thus a failure of proof of any facts which would justify the giving of an instruction upon contributory negligence of respondent Cotton. Appellant's second point is overruled.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.