Valerie **COMMERFORD**, a minor, by and through Valle Commerford, her Father and Next Friend, Respondent,

v.

Paul R. **KREITLER** and Terrence L. Govero, Appellants.

No. 54597.

Supreme Court of Missouri, Division No. 2.

Feb. 11, 1971.

**728**

------

Thurman, Nixon, Smith & Howald, Robert Lee Smith, Hillsboro, for respondent.

Roberts & Roberts, Raymond R. Roberts, Farmington, for appellant, Paul R. Kreitler.

J. Richard Roberts, Nicholas G. Gasaway, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for appellant Govero.

KEITH P. BONDURANT, Special Judge.

This is an action for personal injuries sustained by plaintiff, a minor 19 years old, while riding as a passenger in an automobile operated by defendant Terrence L. Govero, a minor 20, when it collided with a car driven by defendant Paul R. Kreitler, also a minor of 18. The accident occurred in Ste. Genevieve County, Missouri, about 1:30 p. m. on March 31, 1968, a cloudy, rainy Sunday, on Route V, about 0.4 mile east of Highway 61–67.

At trial, plaintiff received a verdict from a jury against both defendants for Ninety Thousand ($90,000.00) Dollars. Both defendants appeal. Neither defendant contests the permanent and serious nature of plaintiff's injuries nor the amount of the judgment, but each defendant claims negligence of the other defendant caused plaintiff's injuries. Defendant Kreitler alleges there was a joint venture between plaintiff and defendant Govero which would impute Govero's negligence to plaintiff and bar her recovery against defendant Kreitler.

Since the amount in dispute exceeds Fifteen Thousand ($15,000.00) Dollars, this Court has jurisdiction on appeal.

The facts will be discussed in reference to the allegations of error presented by appellants as these appear in the body of the opinion. Three such premises of alleged error are raised by defendant Govero. The first is his contention that the lookout instruction (Instruction No. 4, plaintiff's verdict-directing instruction as to defendant Govero) is not supported by the evidence in the case.

Instruction No. 4 is as follows:

"Your verdict must be for plaintiff and against defendant Govero if you believe:

FIRST, Defendant Govero either: failed to keep a careful lookout, or drove on the wrong side of the road, and

SECOND, Defendant Govero's conduct, in any one or more of the respects submitted in paragraph First, was negligent, and

THIRD, Such negligence directly caused or directly contributed to cause damage to plaintiff.

(MAI No. 17.02, 17.05, 17.13, 19.01)"

This instruction submits two grounds of negligence, failure to keep a lookout and driving on the wrong side of the road, in the disjunctive. It is of course true, as stated by defendant Govero, that if the submission of one of the two grounds of negligence is not supported by the evidence, the instruction is erroneous. Green v. Guynes et al., 361 Mo. 606, 235 S.W.2d 298, 303. It is also true that in resolving this question the evidence must be viewed in the light most favorable to the party offering the instruction. Welch v. Sheley, Mo.Sup., 443 S.W.2d 110, 118; Allan v. Read, Mo.App., 433 S.W.2d 58, 59. This Court said, concerning a lookout submission, in the 1969 case of Welch v. Sheley, supra:

"Plaintiff is entitled to an instruction upon the theory of his own evidence

·* * * a lookout submission is proper where the evidence justifies an inference of failure to keep a careful lookout from the facts and circumstances, when considered in the light most favorable to the party offering the instruction." (443 S.W. 2d l. c. 118.)

■ We believe the facts and circumstances in evidence, so considered, justified the inference and conclusion that defendant Govero was not keeping a careful lookout as he approached the place of collision. There was no evidence on this point from plaintiff herself; she was not looking at the road, but at flooded fields "to the left." The facts and circumstances in evidence bearing on the question were elicited largely by testimony of defendant Govero himself, who was called as a witness in plaintiff's case in chief, together with physical facts and measurements established by a registered land surveyor called as a witness by Govero, and testimony of defendant Kreitler, also called in plaintiff's case in chief.

Defendant Govero, with plaintiff as a passenger, was driving his father's 1968 Chevrolet east on Route V in Ste. Genevieve County. The automobile was new, in "excellent condition", with power steering and power brakes, and visibility was good, despite the fact it had been raining earlier and the sky was overcast. The Govero automobile went over a culvert at the bottom of a hill shown to be 353 feet from the hillcrest to the east. It then continued east up the hill at a speed of 35 miles per hour, and 126 feet west of the hillcrest collided with the westbound Kreitler automobile.

Defendant Govero testified that, even though the westbound Kreitler automobile came over the hillcrest, he did not first see its roof or upper part but that instead, when he first saw it, the entire automobile was in view. He could not tell how far it was past the hillcrest and would not estimate how far away his car was from the Kreitler car when he first saw the approaching Kreitler automobile. He testified that immediately upon seeing the Kreitler car he attempted to brake and swerve but was then too close to do either effectively. He was able to get his foot on the brake but there was no time for the brake to react. He attempted to turn to the right, as soon as he saw the Kreitler automobile, but was then so close that there was no time to do so. *Defendant Govero testified he was still going 35 miles per hour at the time of collision.*

Defendant Govero, at the time of the accident, was an athletic 20-year-old young man who played basketball at Junior College. Although the testimony was that average reaction time was $3/4$ of a second, the jury could properly infer that Govero had better than average reactions. Using average reaction time of $3/4$ of a second, however, the fact that neither the application of brakes nor turning of the steering wheel affected speed or direction of the automobile would indicate that, under his own testimony, defendant Govero was no more than 40–45 feet away (less than a second) when he first saw the Kreitler car.

The physical measurements placed in evidence, and not controverted by defendant Govero, established the distance from the culvert at the bottom of the hill to the hillcrest to be 353 feet; that a driver traveling east, when at the culvert or beginning to climb the hill, would begin to see the top of a westbound car when it was 15 feet east of the hillcrest; and that it would thereafter come into his full view. From the culvert one could see the top of a car approaching when 368 feet away (Plaintiff's Exhibit 15).

Defendant Kreitler testified he was traveling 25 to 30 miles per hour. At 25 miles per hour, it would have taken his automobile approximately 3.8 seconds to go from 15 feet east of the hillcrest to 126 feet west of the hillcrest, the accident site. In that 3.8 seconds the Govero automobile traveling at 35 miles per hour would

have gone approximately 200 feet. Under such evidence from the physical facts the jury could have found that defendant Kreitler's car came into defendant Govero's view when 340 feet away; that defendant Kreitler's automobile was then partly in Govero's lane, since both defendants agreed that the Kreitler car maintained the same path it had when it came over the hill crest; and that defendant Govero had 3.8 seconds in which to act but did not react until less than one second remained. The physical measurements were corroborated by a professional surveyor witness for defendant Govero, who stated that automobiles would come into view of each other when between 300 and 400 feet apart.

In addition, defendant Kreitler testified that the Govero automobile was coming straight at him, taking no braking or swerving action, and showing no indication that its driver saw him, when only 20 feet away. Such evidence could have led the jury to believe that, from his actions, Govero was not keeping a lookout.

Finally, the position of the initial impact, one and one-half feet of the left fronts of both automobiles, buttressed by testimony that Govero made no movement to the right and no slackening of speed in all the time elapsing from first view of the Kreitler car until colliding (when a movement of two feet to the right by Govero would have avoided the collision), could well have caused the jury to conclude that Govero was not keeping a lookout.

In addition to such physical facts and measurements in evidence, defendant Govero stated in answer to the question as to whether he looked at anything other than the road ahead as he approached the hill:

"The sky, I think I remember looking at; it was really overcast."

The jury could have concluded from this evidence that, just as the plaintiff was looking at flooded fields to her left and did not see the approaching automobile, defendant Govero's non-action for three seconds after he could have seen the approaching Kreitler car, was caused by his looking at "the sky" until too late for braking or swerving to be effective.

Defendant Govero asserts that "evidence on the lookout question must necessarily come from defendant Govero" and in support thereof cites the 1964 case of Chandler v. Mueller, Mo.Sup., 377 S.W.2d 288, 290. Although that decision did seem to so hold under the facts therein, it relied on the 1960 case of Dawley v. Hoy, Mo.Sup., 341 S.W.2d 111, which seemed to hold that *direct* testimony of the party charged is necessary to support a lookout submission. However, in the 1969 decision of Welch v. Sheley, supra, 443 S.W.2d 110, 118, this Court clarified the rule when it stated:

"Seldom would a party have affirmative evidence that the opposing party was *not* keeping a proper lookout. In Dawley v. Hoy, Mo., 341 S.W.2d 111, relied on by defendant, the two questioned instructions were apparently held erroneous primarily because they did not properly hypothesize the facts on defendant's theory or submit the issues clearly, and that they were confusing and misleading. The court did say, l. c. 117, that 'There was no evidence that plaintiff did not keep a lookout * * *,' but if this be considered as a statement that there must be direct evidence on the subject (which, in the full context we do not believe is true), then the opinion is out of harmony with the great weight of authority in Missouri. That case was decided before M.A.I. Certain of the cases cited by defendant recognize the controlling effect of evidence which permits reasonable inferences from the facts and circumstances. * * * Generally speaking the issue is submissible if there is evidence that the party charged with negligence could have seen the other car (or object) sooner and in time to have acted to avoid the occurrence. * * * The jury has the right to disbelieve entirely the evidence of a party that he *was*

looking vigilantly, or even his testimony that he saw the other car at a certain distance, or that he had stopped."

The Sheley case, supra, involved a multi-car collision, and the testimony, as here, was that defendant had a clear view and could have seen three cars stopped ahead of hers in time to have stopped. She said she did see the cars and was keeping a look-out; plaintiff said she did not. Defendant's testimony was that a car ahead of hers stopped suddenly and she could not avoid impact. In view of the physical facts and circumstances in the case, the unobstructed view ahead for at least a block, the failure of defendant to stop, and the violent impact into the rear of one car causing a bouncing over into plaintiff's car, the court held that plaintiff was not bound by defendant's testimony that she saw the cars ahead as soon as she could and could not avoid initial impact. Since she did fail to act to avoid the collision, the court stated at 443 S.W.2d l.c. 119:

> " * * * she did so either negligently or intentionally. No one can really believe the latter. On the evidence, therefore, a fair inference arises that she did not watch ahead with sufficient diligence to permit timely action."

Hawkeye-Security Ins. Co. v. Thomas Grain Fumigant Co., Mo.App., 407 S.W.2d 622, 625, cited by defendant Govero, does not help him. That case holds that if there is evidence from which the jury could find that defendant could have, in the exercise of the highest degree of care, seen the approaching vehicle sooner and in time to have acted to avoid the collision, a lookout submission is proper.

We hold there was such evidence here. Despite the fact defendant Govero stated he saw the Kreitler vehicle as it was coming over the top of the hill, his further statements that he first saw the entire front, not just its roof, and his failure to estimate how far he was from it when he first saw it, coupled with the physical facts in evidence, his failure to react before impact justified the jury in finding that he could have avoided the accident if he had watched ahead with sufficient diligence to permit timely action.

■ Defendant Govero's next point is that the trial court erred in permitting defendant Kreitler's witness Drury to testify that his automobile had been passed by the Kreitler automobile prior to the accident and to state that at the time of passing the Kreitler car was on its own (right) side of the road, the point of such passing being about one-fourth mile away from the scene of the collision. We find no merit in the contention in view of the fact that such evidence was merely corroborative of previously unobjected to evidence; also, that at the time it was allowed in evidence there had been no indication that the witness had not seen the accident, in which event it would have been proper even without previous corroborative evidence; and, finally, that when it appeared that Drury had not witnessed the accident, the objection was not renewed and no motion to strike or disregard was made by defendant Govero.

Defendant Kreitler had testified, without objection, that just before the collision he had passed the Drury automobile and had waved to its occupants. Thereafter, counsel for defendant Govero asked defendant Kreitler several questions concerning his passing the Drury automobile, the concluding question being whether after meeting the Drury car Kreitler continued until he got to the place of collision without having any trouble, which defendant Kreitler answered affirmatively. When witness Drury was later called, in defendant Kreitler's case in chief, he confirmed such earlier testimony of defendant Kreitler by stating he was traveling east on Route V just prior to the accident and met, waved, and passed the Kreitler car without difficulty. This meeting, waving and passing occurred on the east side of the hill where the accident occurred, and witness Drury testified his car was on the right side of the road, and the Kreitler car on the opposite side. He

noticed nothing unusual about the manner in which the Kreitler car was operating. This testimony was objected to on the ground that the passing was too remote in distance from the accident scene to establish what side of the road the Kreitler car was on at the time of the accident. It did not appear until later in his testimony that, although witness Drury was first on the scene after the accident, having gone to the end of the blacktop and turned around, he did not witness the accident. It is conceded that if witness Drury had seen the collision his testimony as to position on the highway would have been properly admitted. Kitchen v. Pratt, Mo.App., 324 S.W.2d 778, 782 so holds.

The fact that the Drury and Kreitler automobiles had passed each other without difficulty had previously been established by uncontroverted evidence. Defendant Govero's counsel cross-examined Kreitler concerning such passing. He did not attempt to prove that the Kreitler automobile was other than on its own side when it passed the Drury automobile, and this fact was unchallenged. While the later statement of witness Drury that Kreitler had passed his car without trouble and on its own side of the road might be immaterial, it was not prejudicial since it merely reaffirmed a fact already in evidence which had been in part developed by defendant Govero's counsel. As this Court stated in Stanziale v. Musick, Mo.Sup., 370 S.W. 2d 261 l. c. 268, where plaintiff claimed prejudicial error in allowing defendant's adjuster to testify to settlement discussions:

"Plaintiff should not be heard to complain of Bowman's testimony, where substantially the same facts theretofore had been received in evidence *without objection.*"

Additionally, at the time the testimony of witness Drury was offered, it had not been established in evidence that Drury did not see the collision. Such fact was developed by defendant Govero's counsel in later cross-examination. If defendant Govero wished to preserve the point, he should have asked leave to establish the fact Drury had not seen the accident at the time the trial court ruled on the point, or, failing that, to have asked the court to strike the evidence and instruct the jury to disregard it when it appeared in cross-examination that Drury had not seen the accident. Since such action was not taken, the trial judge was faced with a situation wherein evidence substantially similar to previous unobjected to testimony was offered, which was apparently competent and relevant. In such case, as stated in State ex rel. State Highway Commission v. Henderson, Mo.App., 381 S.W.2d 10, 12, "the trial judge must admit it; and he is not to be convicted of error * * * if a showing is afterwards made that * * * the evidence is actually improper. It is not demanded of a trial judge that he possess the quality of prescience."

In view of the foregoing, it is not necessary to consider respondent's contention that the challenged testimony was a "trifling occurrence" and a "tempest in a teapot", nor defendant Govero's allegation that the fact that he assigned error against his co-defendant which was not invited by the plaintiff does not ameliorate the grounds for setting aside a judgment for plaintiff.

Defendant Govero's third and final assignment of error also concerns conduct by co-defendant Kreitler's counsel in cross-examination of defendant Govero for which plaintiff was in no way responsible. On such cross-examination the following occurred:

"Q (By Mr. Roberts, counsel for defendant Kreitler) Now, then, about September of 1968, since this accident, did you plead guilty to speeding in Ste. Genevieve County?

"A I pleaded guilty to the trooper —well, to the town policeman, whatever he was.

"MR. WEIER (counsel for defendant Govero): If the Court please, I am

going to object to that. He is interjecting something that is entirely inappropriate in this trial. It is certainly not anything that has to do with this accident and it is certainly prejudicial to this defendant and I want to move that a mistrial be declared.

"THE COURT: Counsel, will you come up?

"MR. ROBERTS: May I ask a further qualifying question?

"THE COURT: You may.

"MR. ROBERTS: Q Didn't you go over to the Ste. Genevieve Magistrate Court and enter that plea?

"A No, I did not.

(Conference at the Bench and out of the hearing of the jury.)

"The COURT: Mr. Weier, I will overrule your motion for a mistrial and I will sustain your motion insofar as the questions that were asked and an answer purportedly given about an arrest at a City Court. And, members of the jury, you will disregard the question and answer in that regard and the record will be stricken."

 It is conceded that conviction of a misdemeanor, including speeding, in a State court, may be proved on cross-examination to affect the credibility of a witness. Kansas City v. Roberts, Mo.App., 411 S. W.2d 847, Section 491.050, RSMo V.A.M.S. It has also been held, at least since the 1913 case of Meredith v. Whillock, 173 Mo. App. 542, 158 S.W. 1061, 1063, that violation of a city ordinance is not admissible as proof of the commission of a crime contemplated by the statute. Thus, if defendant Govero had been convicted of speeding in the Magistrate Court of Ste. Genevieve County, this could have been shown for impeachment purposes under the statute above cited. The form of the question was not specific, although, as plaintiff asserts, it would appear much more likely that a conviction for speeding "in Ste. Genevieve

County" would have been in a magistrate court within and for said county than a municipal ordinance violation within the jurisdiction of a municipal court in a city of that county. However, defendant Govero's counsel did not timely object to the question, nor ask that it be made more specific. He permitted Govero to answer and then objected and sought a mistrial. Even at this point in the proceedings it was not clear from the answer what nature of speeding offense defendant Govero had incurred; he referred both to "the trooper" and to "the town policeman, whatever he was." The trial court and Mr. Roberts, defendant Kreitler's counsel, appeared to be in similar doubt.

Unless we can infer from the record that defendant Kreitler's counsel was indulging in "sharp practice" of the nature referred to in Cotton v. Pyle, Mo.Sup., 400 S.W.2d 72, 76, and in Kansas City v. Roberts, supra, 411 S.W.2d 1. c. 850, it was entirely proper for him to ask the further qualifying question as to whether a plea had been made in the Ste. Genevieve Magistrate Court. No objection was raised to this question, and after a negative answer, the trial court, although overruling defendant Govero's motion for mistrial, sustained his objection to the earlier question and answer and instructed the jury to disregard both and ordered them stricken from the record.

There is nothing in the record to suggest that counsel for defendant Kreitler was acting in bad faith or that he did not believe, at the time the original question was asked, that he would not be apprised of a State court plea; indeed, his further conduct in seeking to ask the qualifying question suggests the opposite.

Kansas City v. Roberts, supra, involved repeated questions by counsel and an apparently deliberate misleading of the trial court into error. As the Court of Appeals said, 1. c. 850:

"Counsel for plaintiff closed his ears to all objections of defendant and all

admonitions of the court. He persisted in examining and questioning defendant about commission of a crime *within the meaning of the statute*, even after defendant had stated that he had not been so convicted."

In this case, on the contrary, as soon as defendant Govero denied the plea was in magistrate court, nothing further was asked.

In Cotton v. Pyle, supra, counsel directly asked the investigating officer: "You issued a ticket to Mr. Pyle (the defendant), didn't you?" (400 S.W.2d l. c. 75.) The question was asked concerning the very collision at issue in the case, not, as here, concerning a speeding violation occurring months later and having no bearing on the issue of fault in the case being tried. The question itself was an accusatory statement of fact, not, as here, the interrogatory form: "Did you plead guilty?" Nonetheless, despite the improprieties of the question, the trial court in Cotton, supra, refused to declare a mistrial, which action was affirmed upon appeal, this Court ruling:

"Much is left to the discretion of the trial court * * *, and the trial court is in a much better position to determine whether a verdict has been obtained through 'sharp practice,' * * * under the evidence and circumstances that the matter arose and was disposed of during the trial, and that it was considered by the trial court on motion for new trial, we do not perceive prejudicial error." (L. c. 76.)

Finally, defendant Govero complains that the trial court's instruction to the jury was not given "in a strong and firm manner" and refers to the somewhat lengthier instruction given to the jury by the trial judge in Cotton v. Pyle, supra. We believe the trial judge's instruction in this case was plain, clear and complete: " * * * members of the jury, you will disregard the question and answer in

that regard and the record will be stricken." It is difficult to conceive what else the trial court could have said in sustaining the objection.

We find the trial court acted properly within its discretion, that there was no evidence of sharp practices by defendant Kreitler's attorney, that prompt sustaining of the objection and consequent instruction to the jury to disregard the question and answer removed any prejudice against defendant Govero, and that to have declared a mistrial in these circumstances would have amounted to "judicial overkill".

Finding no error in the verdict and judgment in favor of the plaintiff and against defendant Govero, that judgment is affirmed.

The sole allegation of error raised by defendant Kreitler concerns his claim that plaintiff and defendant Govero were engaged in a joint venture at the time of the accident, that plaintiff, as a passenger in the car which defendant Govero was driving, was exercising control of the operation of the automobile, and at the time of the collision had defendant Govero under her immediate view, and that defendant Govero was operating the automobile by plaintiff's direction and authority. The specific assignments of error, however, are: (1) that the trial court refused to permit defendant Kreitler to amend his answer to plead affirmatively that plaintiff and defendant Govero were engaged in a joint venture at time of collision; and (2) the court refused an instruction hypothesizing such joint venture *and* directing of defendant Govero.

Shortly before trial defendant Kreitler attempted to file an amended answer adding a plea of imputed contributory negligence by reason of joint venture. The matter was argued the morning of the trial. The trial court granted defendant Kreitler leave to file the amended answer but, at plaintiff's request, struck from the

amended answer the allegations of imputed negligence. The trial court did so on the ground that plaintiff, a 19-year-old minor, was incapacitated to contract with defendant Govero, and could not be a member of a joint venture. This Court so held in 1968 in Bell v. Green, Mo.Sup., 423 S.W.2d 724, 731.

Defendant Kreitler's proffered amendment to his answer which was stricken stated:

"2. For further answer defendant, Paul R. Kreitler, states that at the time of the collision mentioned in Plaintiff's Petition, plaintiff and defendant, Terrence L. Govero, were engaged in a joint venture and that plaintiff's injuries, if any, were directly and proximately caused by the negligence of the said Terrence L. Govero while engaged in such joint venture with the plaintiff. * * *"

There is nothing in the pleading offered alleging imputed contributory negligence because of exercise of direction or control of the automobile or the driver by the plaintiff—only that plaintiff and defendant Govero were engaged in a joint venture at the time of the accident. The joint venture relation is founded entirely on contract express or implied, is in the nature of a partnership, and can exist only by voluntary agreement of the parties to it. It does not rest upon nor require any actual control, authority or direction, but only the right to control. Bell v. Green, supra, 423 S.W.2d 724, 730, 731.

This Court stated in that case, which also involved a minor passenger in an automobile who was also owner of the car, l. c. 731:

"Since an infant cannot make a valid contract and cannot become a partner, he may not be a member of a joint venture within the legal meaning of the term. The doctrine of joint venture has sometimes been applied in cases arising from automobile collisions, usually to impute contributory negligence * * *,

but we fail to see how it can logically be applied to a minor."

The trial court was correct in striking that portion of defendant Kreitler's amended answer setting up a joint venture on showing that plaintiff was a minor incapable of entering into such a relationship.

The proffered Instruction A refused by the trial court required the following hypothesis:

"First, Valerie Commerford and Terrence L. Govero were engaged in a joint venture at the time of the collision and that she was directing Terrence L. Govero; and * * *."

 The fact that this offered instruction raised matters of affirmative defense when at the time defendant Kreitler had on file only a general denial could be waived, under liberal pleading principles, to permit amendment to pleadings to conform to the evidence, if the evidence supported the conjunctive hypotheses of (1) joint venture and (2) actual control and direction of operation of the automobile by plaintiff. A more serious objection to the instruction, however, is that it did conjunctively hypothesize that plaintiff, a minor, was engaged in a joint venture. M.A.I., at page XXV, states the accepted principle that: "A theory of recovery or defense should not be submitted unless it can stand alone." For reasons above stated, the plaintiff and defendant Govero could not have been engaged in a joint venture at time of collision and a fortiori the jury could not find (1) joint venture and (2) direction by plaintiff.

Even though we need examine no further in order to affirm the trial court's correctness in refusing Instruction A, we believe that even if defendant Kreitler had pleaded that plaintiff was directing defendant Govero and had submitted solely a theory of actual concurrent negligence, there is no evidence to justify a finding

that plaintiff was actually directing the operation of the automobile.

All of the evidence on this point comes from the testimony of plaintiff herself and defendant Govero, and it is uncontroverted. Defendant Kreitler does not claim that he was prevented from eliciting any evidence on the question of direction or that he had any additional evidence not submitted. The total testimony concerning direction of the movements of Govero's automobile consisted of plaintiff's and defendant Govero's statements, elicited on cross-examination by defendant Kreitler's counsel, that the young people were going to plaintiff's aunt's or grandmother's cottage; that Govero had not been there before; that plaintiff had told Govero where he was going to turn and which roads to take to get there; and that plaintiff was merely going to show Govero the road to turn on when he got close to her aunt's place. In fact, plaintiff had not given Terrence Govero very explicit directions even as to the future turn, as shown by the following question and Govero's answer:

"Q (Mr. Roberts, defendant Kreitler's counsel): All right. Now, then, were you expecting that you were going to have another turn off V Highway onto a gravel road before you got there?

"A (Defendant Govero): I didn't know it was a gravel road, I just know it was another turn."

Plaintiff's testimony was similar:

"Q Okay. So you were directing him where to turn and how to get there?

"A I was telling him where the turnoffs were, yes.

"Q And you were expecting to come to one more road where you turn off Route V, where you had to turn, is that right? A Yes.

"Q And had you told the Govero boy there would be one more road to turn off of Route V?

"A I think I did."

This testimony can barely be said to be giving route directions; it falls far short of indicating any real direction whatsoever over the mechanical operation of the car, the direction of the car's movements or telling the driver how to drive. In fact, the evidence is uncontroverted that plaintiff was not watching either the driver or the road at or near the time of the accident; she had been looking at flooded fields; she did not know Govero's driving position or whether he had both hands on the steering wheel; she did not know the position of the car in the road, or which lane it was in; she never saw the approaching Kreitler car; and she had no knowledge of how the accident happened.

The two cases cited by defendant Kreitler are completely distinguishable on their facts and are so recognized in Bell v. Green, supra. Haynie v. Jones, 233 Mo.App. 948, 127 S.W.2d 105, involved a minor passenger charged with negligence of the driver. The minor was the son of the owner of the car and the driver was his guest who was driving by the minor's permission, consent and agency. There was evidence that the minor son of the owner had the car in his possession, charge and control and had delegated the driving to his guest. In addition, there was evidence of actual assumption of control of the mechanical operation of the car by the passenger, including an instruction and direction to the driver, "Flick your lights." In addition, the defendant passenger testified that while his guest was driving along he glanced over to the side of the car to see that the driver did not get off the road to the right and that he was watching "because it was my car and I would naturally be interested in it." Haynie v. Jones, 127 S.W.2d 105, l. c. 107.

Defendant Kreitler contends that Haynie, supra, holds that a minor passenger is liable for the tortious acts of a driver if committed "in the immediate view" of the passenger. No such broad principle is enunciated in that case. The opinion mere-

ly quotes, along with other authority, a general statement from Tyler on Infancy and Coverture, 2d Ed., p. 186, "that an infant is liable for his tortious acts if committed 'by the infant himself, or under his immediate view, or by his direction or authority.'" Haynie v. Jones, supra, 127 S.W.2d 105, 107. In any event, the evidence does not support a contention that defendant Govero's negligent acts were at any time "under the immediate view" of plaintiff, since plaintiff was not at the time of the accident or immediately prior thereto watching either the road, the car or the driver, but instead was watching flooded fields.

The 1923 case of McKerall v. St. Louis-San Francisco Ry. Co., Mo.App., 257 S.W. 166, relied upon by defendant Kreitler, is likewise not in point. There, as in Haynie, supra, a minor child of the owner of an automobile, a 17-year-old girl, had taken the family automobile by authority of her parents. At some point in her driving she had picked up a friend who was driving the automobile with the minor as a passenger at the time the car was struck by a train and all occupants killed. Under the facts of that case and the circumstantial evidence of what occurred, control of the car and its movements was held to have remained with the owner's daughter with a presumption that the driver was her agent.

Since joint venture cannot be supported and actual direction by plaintiff of defendant Govero's automobile or driving movements cannot be found from any evidence in the case, defendant Kreitler's assignment of error cannot be sustained.

The judgment in favor of plaintiff and against defendant Kreitler is affirmed.

Affirmed against both defendants.

DONNELLY, P. J., and FINCH, J., concur.

MORGAN, J., not sitting.