Dennis Lee DORRELL, a minor by Donald
Lee Dorrell, next friend, Plain-
tiff-Respondent,

v.

Donald Dale MOORE, Defendant-Appellant.

No. 9430.

Missouri Court of Appeals,
Springfield District.

Dec. 18, 1973.

Wm. Howard Bloodworth, Jasper Edmundson, Poplar Bluff, for plaintiff-respondent.

Albert C. Lowes, Jackson, for defendant-appellant.

BILLINGS, Judge.

Trial on plaintiff's petition for personal injuries and defendant's counterclaim for property damages, arising from the collision of two vehicles, resulted in a Mexican stand-off with the jury returning verdicts against both claimants. Defendant's after trial motion renewing his motions for directed verdicts was overruled but the trial court granted plaintiff's motion for new trial. Intentional misconduct of defendant's attorney and the verdict being against the weight of the evidence were the reasons assigned by the court for new trial. We affirm.

The collision occurred on August 8, 1971, at about 7:30 o'clock a. m. on a north-south stretch of U. S. Highway 67 about eight miles south of Greenville and a short distance south of where a gravel road enters the highway from the east. The paved portion of the highway is twenty-two feet wide, with usable shoulders approximately eleven feet in width, and is straight and level for about one-quarter of a mile in each direction from the "T" intersection.

Plaintiff was driving his father's 1970 Chevrolet pick-up camper. The camper was equipped with four I.C.C. approved

red lights over the rear door and two amber lights at the top of each side which were visible from each side and from the rear. Because of a dense fog in the area plaintiff had the lights of the pick-up camper burning. As plaintiff approached the highway on the gravel road he stopped his vehicle at a stop sign which is located approximately 26½ feet east of the paved portion of the highway. The view north and south was unobstructed and he looked both ways and saw nothing. With the vehicle in low gear plaintiff drove to the edge of the highway, momentarily stopped, looked again, and listened for any highway traffic. Not seeing or hearing anything, plaintiff drove onto the highway at about five miles per hour and as his vehicle crossed the centerline and turned south in the southbound lane he shifted the truck into second gear and increased his speed to ten to fifteen miles an hour. He continued to accelerate the speed of the vehicle and as he was preparing to shift the gears into the third gear, or high, and as the vehicle was near a point approximately 150 feet south of the intersection the pick-up camper was struck from the rear by a 1970 Ford pick-up truck driven by defendant. Plaintiff did not hear any warning horn from defendant's vehicle and both vehicles were in the southbound lane when the collision occurred. There was no oncoming traffic.

A gravel driveway, located on the west side of the highway led to the home of Eugene Woods. This driveway is about 150 feet south of the intersection and dirt and debris from the collision started in the southbound lane about mid-way of the driveway and continued on south. Skid marks from tires (identified as being from defendant's truck) were on the pavement beginning where the gravel road intersected with the highway and continuing 132 feet south in the southbound lane.

Defendant, a rural mail carrier, was driving south on the highway at a speed of 50 to 55 miles per hour. The fog limited his visibility to 200 feet and he had his truck lights on dim. He claimed he was 100 feet away from plaintiff's vehicle when he first saw it pulling onto the highway and "I throwed on my brakes." Defendant did not sound his horn and made no attempt to swerve his vehicle to either side. In explanation for not having seen plaintiff's pick-up camper sooner he said "I wasn't looking down no gravel roads" and acknowledged that as he drove south on the highway he was not looking to either side of the highway. His version placed the point of collision as being in the right-hand lane going south but approximately 69 feet south of where plaintiff entered the highway.

After the collision, defendant's truck was headed southwest and half-way onto the west shoulder near the north edge of the Wood's driveway. Plaintiff's vehicle ended up 33 feet east of the pavement and some 471 feet south of defendant's truck headed in a southwest direction. The rear portion of plaintiff's vehicle and the front end of defendant's truck were extensively damaged.

We first consider the initial reason of the trial court in awarding plaintiff a new trial, namely, the intentional misconduct of defendant's attorney. The incident giving rise to this charge occurred at the close of the defendant's direct examination of the investigating patrolman. The last question (or statement) directed to the officer was "You gave the Dorrell boy [plaintiff] a ticket did you not." An immediate objection and request for reprimand was lodged by plaintiff's attorney but before the court could take any action defense counsel stated "Well I just want the truth to come out." The court sustained the objection whereupon defense counsel said "I'll withdraw it then." The court then instructed the jury to "disregard it".

In this appeal the defendant argues that the plaintiff got all the relief he requested and that " . . . you can't ask for a bit of relief from the trial court, get what you want, take your chances before the jury,

and then when you get stuck, complain about what someone did when you didn't ask for any further relief." Inferentially, defendant contends plaintiff's failure to seek a mistrial is fatal and says nothing was preserved.

Defendant's contention overlooks several things, not the least of which is that plaintiff did not get all of the relief he requested in that the court failed to reprimand defendant's attorney, and, the fact that the granting of a new trial because of error due to improper and prejudicial examination or argument is an exercise of the trial court's discretionary authority. And, where a discretionary ground is the basis for awarding a new trial the appellate court's review is limited to a determination of whether or not there has been an abuse of discretion. Ryan v. Campbell "66" Express, Inc., 304 S.W.2d 825 (Mo.banc 1957); Hawley v. Merritt, 452 S.W.2d 604 (Mo.App.1970).

■ Trial courts, of necessity, are vested with great discretion in determining the prejudice vel non resulting from such incidents of alleged misconduct and the lower court's action in granting a new trial will only be disturbed when that discretion has been abused. Cook v. Cox, 478 S.W.2d 678 (Mo.1972); Royal Indemnity Company v. Schneider, 485 S.W.2d 452 (Mo.App.1972). In addition, we are reminded that we are to be more liberal in upholding the action of the trial court when a new trial motion is granted than when it is denied. Cook v. Cox, supra. Mo.Digest, App. & Err.,

In Wills v. Townes Cadillac-Oldsmobile, Incorporated, 490 S.W.2d 257 (Mo.1973) the defendant injected by cross-examination of the investigating officer that defendant's driver was not charged or ticketed as a result of the accident. Plaintiff's objection was overruled and in argument defendant referred to the matter further.

Plaintiff's objection and motion for mistrial were denied. In holding this to be prejudicial error the Supreme Court said (l. c. 263): "This in effect brought before the jury the false issue of whether the officer had considered [defendant's driver's] conduct careless and imprudent in any respect . . ." The court noted that the citation or non-citation of a party in a negligence case was improper and that the question of negligence, either through action or non-action of the defendant's driver, was for the jury to decide based on all of the evidence. The court held the cross-examination and argument in respect to the non-citation of defendant's driver would improperly prejudice the minds of the jury.[1]

■ Here an experienced trial judge concluded that the leading question propounded by defendant's attorney as to the citation of plaintiff by the patrolman, and, the further comment of the attorney that "Well I just want the truth to come out" were intentional and for the purpose of injecting a false issue in the case to the prejudice of plaintiff. "[T]he trial court is in a much better position to determine whether a verdict has been obtained through 'sharp practice'" [Cotton v. Pyle, 400 S.W.2d 72, 76 (Mo.1966)] and the Supreme Court has repeatedly condemned this type of question as improper in a negligence case. Cotton v. Pyle, supra; Wills v. Townes Cadillac-Oldsmobile, Incorporated, supra; Commerford v. Kreitler, 462 S.W.2d 726 (Mo.1971); Brownridge v. Leslie, 450 S.W.2d 214 (Mo.1970). We find no abuse of discretion by the trial court in granting a new trial on this ground and would also observe that Rule 78.01, V.A.M.R. provides that "The court may award a new trial . . . in any case where there has been . . . misconduct . . . of a party or his attorney . . . ." Defendant's point is denied.

---

1. We observe that the *same* firm of attorneys who represented plaintiff in the Wills case are attorneys for the defendant in the case at bar.

■ The trial court's second stated ground for sustention of plaintiff's motion for a new trial is that the verdict was against the weight of the evidence. Rule 78.01 authorizes the grant of one new trial on the ground that the verdict is against the weight of the evidence, and, the grant of a new trial for this reason is within the sound discretion of the trial judge. Gray v. Koplar-Barron Realty Co., 497 S.W.2d 185 (Mo.App.1973); Leonard v. Bartimus, 463 S.W.2d 579 (Mo.App. 1971); Stewart v. Manor Baking Company, 397 S.W.2d 722 (Mo.App.1965). An order granting a new trial on the ground the verdict was against the weight of the evidence is presumptively correct, and the reviewing court will be liberal in upholding such an order. Land Clearance for Redevelopment Authority of City of Joplin v. Joplin Union Depot Company, 429 S.W.2d 806 (Mo.App.1968). The granting of a new trial on such ground constitutes an abuse of discretion only where the party to whom the new trial is granted did not make a submissible case. Clark v. Ford, 498 S.W.2d 803 (Mo.1973); Leonard v. Bartimus, supra. In determining this latter question we look to the evidence most favorable to the sustention of the order and disregard the testimony favorable to the party who obtained the verdict unless such testimony aids the successful movant. Land Clearance for Redevelopment Authority of City of Joplin v. Joplin Union Depot Company, supra. Because defendant contends plaintiff failed to make a submissible case of negligence on failure of the defendant to keep a careful lookout or that defendant drove at an excessive rate of speed, we review the evidence in the light most favorable to plaintiff.

■ We are of the opinion that a submissible case of negligence was made as to both the issues of lookout and excessive speed and that a jury could find that such negligence was the proximate cause of the collision and resulting injuries to the plaintiff. To make a submissible case based on a defendant's failure to keep a careful lookout it is unnecessary for a plaintiff to produce direct evidence that the defendant was not looking. It is sufficient to show that the defendant reasonably could have seen the danger of collision in time to have taken evasive action. Watterson v. Portas, 466 S.W.2d 129, 131 (Mo.App.1971). Here, there is direct evidence that the defendant was not looking. He admitted he was not looking to the sides of the highway he was travelling and one who operates a motor vehicle in this state is required to keep a vigilant lookout laterally as well as ahead. Gerdel v. Broccard, 428 S.W.2d 492, 494 (Mo.1968). Plaintiff stopped his vehicle at the stop sign on the gravel road he was travelling and this stop sign was located approximately 26½ feet from travelled portion of Highway 67. He then moved slowly to the edge of the highway where he stopped again. At both stops plaintiff looked and listened for oncoming traffic but saw or heard none. The various lights of plaintiff's vehicle were on at all times. Plaintiff then turned left onto the highway heading south and after he had travelled approximately 150 feet down the highway and reached a speed of about 15 miles per hour, his vehicle was violently struck from the rear. Although defendant stated his visibility was 200 feet he did not see plaintiff until the two vehicles were only 100 feet apart.

■ The evidence clearly indicates defendant was not looking where he should have been looking. Given the time intervals between plaintiff's stop at the stop sign, his stop at the edge of the highway, and his actual entrance onto and south on the highway, the jury could have found that defendant, had he kept a careful lookout, could have seen plaintiff earlier than he did and could have taken evasive action. Furthermore, defendant admittedly did not attempt to take evasive action other than braking his vehicle once he actually saw plaintiff's vehicle. There was no oncoming traffic which would have prevented defendant's passing plaintiff in the open northbound lane and there was an eleven

foot shoulder immediately adjacent to the southbound lane which defendant could have used. "What constitutes negligence in failing to keep a lookout in a particular direction at a particular time or place, and whether a driver who has looked has seen all that he should, is usually a fact question." Henrickson v. Resnik, 390 S.W.2d 610, 616 (Mo.App.1965). "Certainly in the case at bar whether [defendant] failed to see what he should have seen was a question to be decided by the jury. . . . And it was also within the province of the jury to determine that he could have affirmatively and efficaciously acted to avoid the collision . . . ." Allen v. Bi-State Development Agency, 452 S.W.2d 288, 291 (Mo.App.1970). Having found that plaintiff made a submissible case of negligence under improper lookout, we cannot say as a matter of law that the actions and inactions of defendant were not negligent.

■ Similar reasoning is applicable to defendant's contention that there was no evidence present from which a jury could have found that the defendant was driving at an excessive rate of speed at the time of the accident. Defendant was travelling at a speed of 50–55 miles per hour in a dense fog which limited his visibility to 200 feet. Driving a rate of speed which endangers persons or property may be negligent even though such speed is within the posted speed limit. Rakestraw v. Norris, 478 S.W.2d 409, 415 (Mo.App.1972). Whether a particular speed is high, dangerous and excessive depends upon the condition of the highway and the surrounding facts and circumstances. A case was made for the jury on negligent speed by defendant's admissions as to the prevailing conditions [dense fog], his speed, and as to the fact his visibility was limited to 200 feet. Steele v. Goosen, 329 S.W.2d 703, 710–711 (Mo. 1959).

■ Defendant further argues that even if plaintiff made a submissible case of negligence on either improper lookout or excessive speed the evidence failed to show a causal relationship. "The proper test of speed as a proximate cause of a collision is whether the speed prevented the driver from avoiding the collision. Buzbee v. Greyhound Lines, Inc., Mo.Sup., 467 S.W.2d 933, and five cases cited 1. c. 935. The proper test of failure to keep a careful lookout as a proximate cause is whether in the exercise of the highest degree of care the driver of the defendant's vehicle could have seen the other vehicle in time to have taken effective precautionary action in avoidance." Marshall v. Bobbitt, 482 S.W.2d 439, 442 (Mo.1972). Here the defendant's admitted failure to look where he should have been looking, his admitted failure to see the plaintiff until the vehicles were only 100 feet apart, his admitted failure to take any evasive action other than applying his brakes, and the further facts that defendant was travelling at a rate of 50–55 miles per hour in a dense fog which limited his visibility to 200 feet, all give rise to a permissible inference of negligent lookout and excessive speed, and authorize submission of lookout failure and excessive speed as causative factors. Id., at 443. Defendant's point is denied.

Defendant further contends that he was entitled to a directed verdict in his favor on plaintiff's petition at the close of the evidence because plaintiff was guilty of contributory negligence as a matter of law because of plaintiff's failure to keep a careful lookout and/or failing to yield the right-of-way. Defendant also urges that he was entitled to a directed verdict in his favor on the issue of liability on his counterclaim.

As to the latter proposition defendant argues that the record reveals he was free from contributory negligence as a matter of law. Defendant's argument fails for two reasons. Defendant was cast with the burden of proof on his counterclaim and a " 'trial court is [seldom] justified in directing a verdict in favor of a party having the burden of proof where the case depends upon oral testimony.' " Parsons Construction Company v. Missouri Public Service Com-

pany, 425 S.W.2d 166, 172 (Mo.1968); Also see Zagarri v. Nichols, 429 S.W.2d 758 (Mo.1968). Further, the question of defendant's contributory negligence as to his counterclaim, under the facts herein was for the jury.

 Defendant's contentions concerning plaintiff's alleged contributory negligence was likewise for the jury because even if it be assumed that plaintiff was guilty of failing to keep a careful lookout or in failing to yield the right-of-way the question would still remain whether either such failure by plaintiff was the proximate cause or contributing proximate cause of the collision. Additionally, in this case, the jury could have found that plaintiff did keep a careful lookout and was under no obligation to yield the right-of-way to the defendant. Plaintiff stopped his vehicle twice before actually pulling onto the pavement. Both times he stopped, looked and listened for approaching traffic, but saw or heard none. Although visibility was limited to 200 feet the plaintiff had travelled a distance of approximately 150 feet south on the highway and had attained a speed of at least 15 miles per hour when his vehicle was struck from the rear by defendant's. "[W]hether a driver who has looked has seen all that he should, is usually a question of fact for the jury." Henrickson v. Resnik, supra, 390 S.W.2d at 616. On the issue of right-of-way plaintiff was required to yield to defendant only if defendant's vehicle had already entered the intersection or was approaching so closely on the highway as to *constitute an immediate hazard.* Section 304.351(4)(1)(a), RSMo 1969. Also see Heman v. Perry, 389 S.W.2d 1 (Mo.1965).

On the record before us we cannot say plaintiff was contributorily negligent as a matter of law on failing to yield the right-of-way to the defendant. Whether plaintiff was required to yield the right-of-way, and if so, whether his alleged failure to do so was the proximate or contributing proximate cause of the collision are questions

of fact for a jury. Schaetty v. Kimberlin, 374 S.W.2d 70, 72–73 (Mo.1964).

The judgment of the trial court granting a new trial is affirmed.

TITUS, C. J., STONE, J., and McHANEY, Special Judge, concur.

HOGAN, J., not sitting.