**Gerald Lewis HOERSCHGEN, a minor, by Edna Hoerschgen, his duly appointed next friend, Appellant,**

**and**

**Francis Hoerschgen and Edna Hoerschgen, parents of Gerald Lewis Hoerschgen, Plaintiffs,**

**v.**

**George Henry DUNNAVANT, a minor, by Kelly Pool, his duly appointed guardian ad litem, Respondent.**

**No. KCD 28156.**

Missouri Court of Appeals, Kansas City District.

Jan. 31, 1977.

**752**

William A. Seibel, Jefferson City, for appellants.

Kelly Pool, Jefferson City, for respondent; Hendren & Andrae, Jefferson City, of counsel.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

PER CURIAM:

Appellant Gerald Lewis Hoerschgen had a judgment upon verdict for $250.00 for personal injuries in an automobile accident upon Count I of the petition. His parents, plaintiffs above, received a verdict of $1,000.00, but the trial court granted them a new trial as to damages only upon the ground that the verdict of the jury was grossly inadequate. Appellant contends that he too should have had a new trial because of an inadequate award of damages, and makes also three contentions that the court erred in refusing to declare a mistrial and discharge the jury. These three contentions are set forth in appellant's first three points and then are grouped in the fourth point by which it is contended that the errors were deliberately done by experienced trial counsel, resulting, cumulatively, in a grossly inadequate verdict.

■ During cross-examination of the librarian of the University of Missouri Medical Center, this occurred: "Q. Now, this form contains certain abbreviations on it, I guess they're abbreviations, referring down to approximately the middle of the page you see the words 'BC', what do those letters stand for? A. Blue Cross. Q. And there's next—MR. SEIBEL: Now, if the Court please, I am going to object to that. It has no bearing upon the issues in this case." The court sustained the objection and granted the request that the jury be instructed to disregard the question and answer for any purpose. After the cross-examination was finished, appellant asked that the jury be discharged, which was overruled. It is doubtful that the question had any effect upon appellant's claim as he did not ask for reimbursement for medical expenses. The collateral source rule would apply only to appellant's parents' claim where they asked for appellant's medical expenses. Nevertheless, if the question and answer were improper as to appellant, the court took corrective action in sustaining the objection and instructing the jury to disregard the question and answer. Discretion is vested in the trial court as to the sufficiency of the corrective action taken. *Cotton v. Pyle,* 400 S.W.2d 72, 76[2–5] (Mo. 1966), where it was said also that the trial court is in a better position to determine if verdict has been obtained through " 'sharp practice.' " The matter arose and was disposed of during the trial, and it was considered in the motion for new trial as in the *Cotton* case. No prejudicial error appears.

■ The second contention of error has to do with cross-examination of appellant as to criminal offense convictions in Cole County, Missouri, which he first acknowledged to have been possession of alcoholic beverages, six or seven times, but he later clarified the convictions to have been in city court, not the magistrate court. Appellant says the cross-examination violated the rule in *Commerford v. Kreitler,* 462 S.W.2d 726, 733[4–6] (Mo.1971), that violations of city ordinances are not admissible as proof of the commission of a crime contemplated by § 491.050, RSMo 1969, as affecting credibility. No proper objections were made as to present the matter to the trial court for a ruling under the *Commerford* case, or to preserve it for review. The first objection was "I object to that" which is insufficient under *Anderson v. Welty,* 334 S.W.2d 132 (Mo.App.1960). The second objection was "If the court please, I am going to object to any—such evidence has no bearing upon the issues in the case." *Heinbach v. Heinbach,* 274 Mo. 301, 202 S.W. 1123, 1127[7–9] (1918), held a similar objection, without specific grounds being stated, to preserve nothing for review. The same is true of appel-

lant's further objections. The trial court advised counsel for appellant that if he had made a proper first objection on the grounds that the convictions were for violations of city ordinances it would have been sustained. But what cured any error injected into the case, which was brought about by the obvious confusion of appellant as to what convictions he had, was this strong admonition to the jury: "THE COURT: Ladies and Gentlemen of the Jury, a conviction of a crime can be inquired into on cross-examination of a witness, but a violation of a City Ordinance is not a conviction of a crime; so the occurrences which this witness had admitted to or not the proper evidence under the Missouri Rules; therefore, you will disregard those for any purpose." The court did not err in refusing to grant a mistrial in view of the admonition. *Cotton v. Pyle,* supra.

■ Point III is likewise ruled against appellant, which point is on the same basis as contended above, except that he contends that injection of ordinance convictions was done deliberately by counsel, and the court's admonition did not cure it. There is no evidence that counsel acted deliberately. To the contrary, considering the posture of the matter in appellant's pre-trial disposition, and at the beginning of his cross-examination, where there was no suggestion that the convictions were for inadmissible violations, the only conclusion is that counsel acted in good faith.

■ In Point IV, appellant contends that the court erred in overruling his motion for new trial on the issue of damages only because the verdict was against the weight of the evidence, and the uncontradicted evidence of Dr. Litton regarding a requirement of $500.00 for removal of ankle pins, not to mention permanent disability, scar tissue and pain and suffering. It is noted that appellant did not ask for medical expenses, past and future, in Count I of the petition. His parents did that in Count II, and they were awarded a new trial. Thus, the claim for $500.00 for removal of ankle pins will not be considered.

■ Dr. Lynn Litton, M.D., an orthopedist, saw appellant on July 11, 1971, at the University of Missouri Medical Center. He found a swollen, discolored right eye with a 4 centimeter laceration on the upper lid. X-rays revealed a fracture of the right orbital floor (the bottom of the eye socket), and two broken bones in the ankle. The ankle was operated upon and two pins were placed across the outside fracture, a screw was placed on the inside ankle joint. The pins were attached to malleable wire which was tightened thus holding the fracture immobile. According to the doctor, the pins and screw should have been removed because they are tender whenever the ankle is bumped and it usually hurts. Immediately after the operation the ankle is swollen, painful, tender and sore, and the swelling subsides. The doctor thought appellant was in a cast about 8 weeks, then being on crutches. After the cast is off, it was painful to walk on the foot right away, and it might average a month or so in soreness, a total period of disability of 5 or 6 months. "After this they continue to have some discomfort, particularly when the pins are bumped, when they are on their feet for long periods of time it might have to be painful and maybe swell a little bit." The doctor would not think there would be any disability in the ankle after the period of disability by virtue of removal of the pins. On cross-examination, the doctor testified that appellant was advised to have the pins taken out March 14, 1973, but he had not contacted the doctor or the medical center since that date.

■ Appellant acknowledged that he was able to play football and wrestle. There was evidence that he swam, and had been in fights. All of these activities took place after the accident. Although being told, he had never taken steps to have the ankle pins removed. There was no evidence of loss of income. Although there was evidence of scarring about the eye and on the nose, these were visible to the jury. Other than the scarring there was no evidence of permanency of injuries. Nothing came into the case which was not relevant either to the issue of appellant's contributory negli-

gence or the nature and extent of his injuries, so there is nothing in the course of the trial which could be a basis for a finding of bias and prejudice in the jury's evaluation of his damages. The amount of damages is primarily for the jury, and its broad discretion in fixing the amount of the award is conclusive on appeal, especially where the verdict, as here, has the approval of the trial court as evidenced by its overruling of the motion for new trial. *Boehmer v. Boggiano,* 412 S.W.2d 103, 110, 111 (Mo.1967). See also *Homeyer v. Wyandotte Chemical Corporation,* 421 S.W.2d 306 (Mo.1967), where an award of $350 was not set aside on appeal as being inadequate. Point IV is overruled, and what has been said disposes of the cumulative error contention of Point V.

The judgment is affirmed.