PITZ, APPELLEE, *v.* MOTOR FREIGHT, INC., APPELLANT.*

*Motion to certify the record overruled (37397), May 9, 1962,

(No. 2950—Decided November    , 1961.)

Messrs. Meyers, Stevens & Rea and Mr. Loren E. Souers, Jr., for appellee.

Messrs. Amerman, Burt, Shadrach, McHenry & Jones, for appellant.

McLaughlin, P. J.  The jury awarded the plaintiff, a guest passenger, a personal injury verdict in the amount of $62,500. The car in which she was riding ran into the rear end of a tractor-trailer outfit which was one of a fleet of coal-hauling trucks owned and operated by the defendant.

The accident happened about 6:30 p. m.  It was dark.  Defendant's outfit was stopped in a no-parking zone in Canal Fulton village.  The defendant claimed that an emergency or legal excuse existed by reason of a stalled motor, and denied negligence.  Judgment having been rendered upon the verdict, this appeal on questions of law results.

Defendant assigns the following errors:

"1. The court erred in its general charge to the jury in the following respects.

"(a) Error in the charge as to the requirements as to lights on parked vehicles;

"(b) Error in charging the jury upon the subject of sudden emergency;

"(c) Error in charging as to loss of earnings of the plaintiff;

"(d) Error in charging as to inferences from testimony without giving law as to effect of positive evidence;

"2. The court erred in giving the requests to charge before argument dealing with the subject of emergency and as appear on record pages 335 and 336;

"3. The court erred in overruling defendant's motion for new trial because of excessive damages appearing to have been given by the jury under the influence of passion and prejudice;

"4. The court erred in the admission of evidence offered by the plaintiff and excepted to by the defendant;

"5. The court erred in refusing to take from the consideration of the jury the issue as to lights on defendant's truck;

"6. The court erred in that said verdict and judgment are not sustained by sufficient evidence;

"7. The court erred in refusing to withdraw from the consideration of the jury the issue of proximate cause as applied to the stopping of defendant's truck in a 'no parking' zone;

"8. The court erred in failing to set aside the verdict upon motion for new trial and in refusing to grant a new trial;

"9. The court erred in failing to grant defendant-appellant's motion for judgment notwithstanding the verdict."

The operative facts as shown by the record are: The defendant company owned a number of large tractor-trailer outfits and several of them were engaged in hauling coal from New Philadelphia to Barberton via Route 21 and through Canal Fulton. Around 2 p. m., December 15, 1955, one of these outfits was headed south empty, returning from Barberton. Its motor stalled in the center of Canal Fulton, blocking traffic at the intersection of State Routes 21 and 93. The stalled outfit was towed by another truck (not defendant's) to a place farther south on Route 21 where parking was permitted. It was then about 2:30 p. m. The New Philadelphia office was called for help. A mechanic arrived later in a one-and-a-half-ton pick-up truck. He worked on the stalled motor, determined that the trouble was a frozen fuel line, and then attempted to pull the big outfit out of the village where he could work on it off the road. The big outfit weighed about 13 tons and the pick-up about 1½ tons. The small truck was only able to move the big outfit about 150 feet farther south, to a point just past the "T" intersection of Norton Street, where Route 21 narrowed and

consequently parking was prohibited by village ordinance. The big stalled outfit remained there in this "no parking" zone until the time of the accident, around 6:30 p. m.

In the meantime, another similar tractor-trailer outfit of the defendant went north loaded, discharged its load at Barberton, and came back and stopped to assist the disabled outfit. It was then between 5 and 6 p. m. Instead of hooking on and towing the disabled outfit out of town or out of the "no parking" zone, this other outfit, upon instructions from the mechanic, proceeded south of town, turned around and came back and stopped headed into the front of the disabled outfit, so that the air hose could be used to blow out the fuel line of the disabled outfit.

While they were thus working on the disabled outfit, the accident happened. A car in which the plaintiff was a guest passenger ran into the rear of the disabled outfit. The plaintiff was seriously injured.

Whether the disabled outfit had lights on is in dispute. Whether a lighted street light illuminated the disabled outfit or whether that light was obscured more or less by a large buckeye tree is also in dispute. Both questions were given to the jury to determine.

The whole question of lights was determined and settled by the jury when it unanimously answered the following interrogatory:

"Do you find from the evidence that there were lights burning upon the rear of defendant's trailer immediately before and at the time of the collision involved herein? Answer: *No.*"

It is apparent from the record that the liability of the defendant depends mainly on whether a legal excuse was shown for having stopped or parked its tractor-trailer outfit there. This was a jury question. From the defendant's standpoint it was contended that the emergency stopping continued through about 4½ hours, or from a period beginning about 2 p. m. and lasting until about 6:30 p. m. It was also contended that the "no parking" ordinance was one of convenience, likened unto a prohibition against parking in front of a fire plug, and that the mere parking in such "no parking" zone would not be negligence per se under the circumstances. From the plaintiff's standpoint it was contended that the emergency did not

continue, but applied only to the first stopping in the center of town, or for a half hour, only. It is contended also that the other outfit of the defendant could just as easily have towed the disabled outfit farther south out of town and off the road, which was done after the accident, and that the "no parking" ordinance was a safety measure, enacted to promote safe driving, its provisions directed to the narrowed part of Route 21 south of Norton Street.

The trial court instructed the jury in part as follows:

"* * * if you find by a preponderance of the evidence that defendant on the date in question and at the time of this accident was parked upon one of the streets in the village of Canal Fulton, Ohio, in violation to the ordinance which the court just read to you, then in that event the defendant is negligent as a matter of law * * *."

The legal effect of this instruction is to say that the ordinance in question is a safety ordinance. We approve.

The trial court also instructed the jury respecting an emergency, in another part, as follows:

"However, the defendant claims that although it violated the ordinance by parking in a prohibited zone that the action cannot be negligence because the defendant was faced with an emergency.

"Well, what do we know about an emergency?, Webster says this: 'An emergency is a—a sudden, generally unexpected occurrence or set of circumstances, demanding immediate action.'

"In view of the claim of the defendant, members of the jury, you will be called upon to determine this question of whether or not there was an emergency that existed at the time of the accident involved, in this case; and in order to determine this question you may take into consideration the breakdown of the truck of this defendant, where it occurred, the moving of the truck, the place where the truck was moved, the time involved, what was done by the servants of the defendant and all other facts and circumstances of the case. And after considering the evidence on this question and you come to the conclusion then that an emergency was created, then go further and determine whether or not at the time of the accident the emergency had ceased or was permitted to continue.

"If you find by a preponderance of the evidence that at the time of the accident the emergency had ceased, then as a matter of law the defendant was negligent in parking its truck in violation of the ordinance.

"If you find by a preponderance of the evidence that at the time of the accident that an emergency had existed, then the defendant had a legal excuse for parking in violation of the ordinance and the defendant would not be negligent in that particular respect.

"If a person, without fault of his own, is placed in a position of a sudden emergency, the same degree of judgment and care is not required of him as is required of one who is acting under normal conditions. The test in an emergency situation is not what a reasonably careful person would do or not do under ordinary circumstances, but what a reasonable careful person might be expected to do or not do under the same or similar emergency circumstances.

"Now as the court indicated the defendant claims that it had a legal excuse for the violation of this particular ordinance.

"If, and only if, the sudden emergency existed will the defendant be excused from a violation of a statute or an ordinance. For a sudden emergency to exist you must first find that the defendant was confronted with an emergency; that is, a happening that could not be anticipated by the defendant, a happening that was sudden, and was not of his own making. If such occurrence could be reasonably anticipated or occurred with sufficient time to remove it from being sudden or if defendant created the emergency himself or itself, then no sudden emergency existed and the defendant is negligent for parking in a prohibited zone.

"However, if you find that a sudden emergency existed, although the defendant is excused from complying with the statute or ordinance, he is still required to use ordinary care under all the facts and circumstances then existing. The danger, confusion and excitement of the situation, along with all the other facts, must be taken into consideration in determining whether ordinary care was exercised under those circumstances.
"* * *

"If you find that a sudden emergency did exist, you should

determine what the facts and circumstances were at that time; determine what the defendant did or did not do; and in the light of all these facts decide whether the defendant used ordinary care at that time. If he—or it did, then the defendant was not negligent in this respect; if the defendant did not, then it was negligent * * *."

We approve this instruction. It is well stated.

We have carefully examined the whole charge of the trial court, including the special instructions before argument. In our opinion the issues were accurately and precisely defined and the applicable law given. We find no prejudicial error committed in the general charge or the special charges given before argument. Therefore the first assignment of error is overruled.

Assignments of error Nos. 4, 5, 6, 7, 8 and 9 are overruled for the reasons given in overruling assignment of error No. 1.

The special requests to charge before argument, cited in the second assignment of error, or those dealing with the subject of emergency were identical with requests which this court approved in a former appeal of this case. Therefore, the second assignment of error is overruled.

This brings us to assignment of error No. 3—that the trial court erred in overruling defendant's motion for a new trial because of excessive damages appearing to have been given under the influence of passion and prejudice. We find no record evidence or any happenings during the lengthy trial which we can say even tended to inflame the jury against the defendant or to excite any undue influence towards sympathy for the plaintiff or passion or prejudice against the defendant. Counsel cites no particulars from the record. Therefore we cannot say that the verdict appears to have been under the influence of either passion or prejudice or both. It is contended however that the verdict is so excessive as to warrant a substantial remittitur. This prompts a careful scrutiny of just what the record shows as to the nature and extent of the plaintiff's injuries.

In this accident the plaintiff sustained a broken hip. The fracture was near the socket. It never properly healed. She was hospitalized for about 100 days and on crutches for several months. Medical experts testified that her lame condition was

permanent and would continue to be painful. She also suffered an aggravation of pre-existing arthritis in the right knee. She was about 70 years old at the time of the accident and near 75 years old at the time of the trial. She was a widow without dependents. She was in good health, took care of her own home and garden and was employed five days a week as a baby sitter for three small children.

To put it bluntly, this accident crippled her for life. The serious nature and extent of her injuries was not disputed. She was not cross-examined about them, and no counter medical testimony was offered.

The jury was charged that it could consider her loss of earnings. No evidence was offered to show how much her earnings were. The defendant claims this was error. We hold that it was not prejudicial since she was doing very ordinary work and any jury could easily evaluate such services. See *Hossler, Exr.,* v. *Trump,* 62 Ohio St., 139.

The jury's award was obviously based upon the permanent nature of her injuries and the pain she was able to convince the jury that she had and that it would continue for her lifetime.

Her special expenses (hospital and medical) were about $2,400. If we assume that the jury purposed to ''see that she was provided for the rest of her life,'' and assume further that her injuries were as serious as claimed, we cannot quite justify the size of the verdict. Considering her age, her probable life expectancy (we note that the trial court did not instruct the jury, nor was it requested, upon the earning power, interest, of money as such), it does more than compensate her. It enriches her. This verdict has built her an estate upon which the interest alone would take care of her well for the rest of her life. It does not square with our idea of what is meant by compensatory damages.

We think the verdict should have been such that most of the principal would be consumed for her care and comfort during her lifetime. For these reasons we hold that the $62,500 award is excessive, but not the result of passion and prejudice, and that a remittitur is warranted.

Accordingly, we grant a conditional remittitur of $12,500, making the total award amount to $50,000, conditioned upon its

288

acceptance by the plaintiff within twenty days from the date of our final entry on this appeal.

*Judgment accordingly.*

RUTHERFORD and McCLINTOCK, JJ., concur.