Bobby Leon SKILES, by His Next Friend, Howard T. Skiles, Plaintiff-Appellant,

v.

Robert E. SCHLAKE, Defendant-Respondent.

No. 52488.

Supreme Court of Missouri, Division No. 1.

Nov. 13, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 11, 1967.

John W. Reid, II, of Schnapp, Graham & Reid, Fredericktown, for plaintiff-appellant.

H. L. C. Weier, Dearing, Richeson, Weier & Roberts, Hillsboro, for defendant-respondent.

WELBORN, Commissioner.

In this action for personal injuries to Bobby Leon Skiles, a pedestrian struck by an auto driven by defendant Robert E. Schlake, a jury returned a verdict in favor of the plaintiff for $75,000. The trial court subsequently sustained the defendant's motion for a new trial on the specific grounds of error in one of the plaintiff's verdict-directing instructions. The plaintiff has appealed from the order for a new trial.

The accident occurred on August 30, 1963, at around 9:30 P. M., Daylight Saving Time, on Route 21 in Old Mines. The weather was clear, the pavement dry. The defendant was driving a 1960 Chevrolet station wagon north on Route 21, with his wife and children as passengers. In the area involved, Route 21 is a 21′ bituminous paved roadway with shoulders on either side, some 5 to 6 feet in width. As one proceeds north, near the southern edge of Old Mines, indicated by a sign proclaiming a 35 miles per hour speed limit, Route 21 curves slightly to the left. The highway is then comparatively straight and level until it again curves, to the right, some 750 feet to the north of the point of the first curve. On the northbound driver's right in this area, some 400 feet from the south curve, is a grocery store and filling station. Beyond the store is a tavern. On the driver's left is a drive-in theater. The southernmost entrance to the theater is 440 feet from the point of the south curve. A second entrance is 150 feet to the north of the first, or some 590 feet north of the curve.

Bobby Leon Skiles, then 15 years of age, had gone to the drive-in movie that evening with his brother, Roger, and Ronald Lowe, 12 years of age, and Donald Boyer, 15. At around 9:30, the four decided to leave the theater and go across the highway to buy candy at the store. The four left by the north entrance to the theater. The four boys stopped at a point some 6 feet from the west edge of the pavement to permit three to five southbound automobiles to pass. After the last of these vehicles had passed, Bobby Leon Skiles and Ronnie Lowe looked to the south, and, seeing no northbound traffic, started to cross the highway. Bobby said that he "trotted" across the roadway, with Ronnie a few steps behind him. When Ronnie was a step or two across the center line of the pavement, he was struck by the defendant's automobile.

Bobby Leon, according to his testimony, was one to two feet on the shoulder on the east side of the pavement when he started to turn, and was struck by the defendant's auto. Both Ronnie and Bobby testified that they at no time saw the defendant's auto before it struck them.

The defendant testified that he was driving his auto at 30 miles per hour, and that, just as the fourth or fifth southbound vehicle had passed his auto, Bobby "hit the front of my car, and the young Lowe boy had run into the side of my door there." He stated that he saw neither prior to the impact and that his auto was on the traveled portion of the highway at all times.

Plaintiff's case was submitted on humanitarian negligence, charging failure to warn, swerve or slacken speed. Also sub-

mitted by Instruction No. 5 was ordinary negligence, as follows:

"Instruction No. 5.

"Your verdict must be for plaintiff if you believe:

"First, defendant either: failed to keep a careful lookout, or caused, allowed and permitted his vehicle to leave the travelled portion of the roadway, and

"Second, defendant's conduct in any one or more of the respects submitted in paragraph first, was negligent, and

"Third, as a direct result of such negligence, the plaintiff sustained damage.

"Unless you believe plaintiff is not entitled to recover by ̄reason of Instruction Number 8."

Upon defendant's motion for new trial, the trial court concluded that it had misdirected the jury in giving Instruction No. 5 "in that said Instruction Number Five combined a hypothesis of primary and general negligence." On this appeal, defendant has sought to support the trial court's ruling on other grounds and also contends that plaintiff failed to make a submissible case on any theory.

■ Before considering the specific grounds of the trial court's order, we will dispose of the defendant's contention that, in any event, plaintiff made no submissible case on failure to maintain a lookout or on leaving the traveled portion of the highway. On the lookout proposition, defendant contends that there was no evidence from which the jury could find that, in the exercise of the highest degree of care, defendant could have seen plaintiff in time thereafter to have taken some effective precautionary action which would have avoided the injury to plaintiff. In his argument on this proposition, defendant is willing to assume that "plaintiff was 6 feet off the west side of the roadway when he started across the highway and *that defendant could see the plaintiff when he began his motion toward the highway* * * *." Such assumption neces-

sarily admits that defendant could have seen plaintiff before he did. Whether his failure to do so was causally related to the injury would, in such circumstances, be for the jury. Lincoln v. Railway Express Agency, Inc., Mo.Sup., 359 S.W.2d 759, 768 [13]. See O'Neill v. Claypool, Mo.Sup., 341 S.W.2d 129, 135 [11, 12].

■ As for failure to make a submissible case on leaving the traveled portion of the highway, defendant's argument is based largely on the theory that plaintiff could not submit such a theory because of allegation and submission of specific negligence. However, that does not go to the question of sufficiency of the evidence to authorize submission of the issue. On that point, plaintiff himself testified that he was some one to two feet on the shoulder at the time that he was struck. This would clearly warrant the inference that defendant had driven off the roadway. Defendant's argument that the weight of credible evidence was contrary to the plaintiff's testimony affords no basis for our holding that there was no evidence upon which to base submission to the jury of the issue.

Concluding that the defendant's argument of no submissible case on the issues submitted by Instruction No. 5 is without merit, we turn to the trial court's ruling that the instruction was erroneous because it combined a submission of specific and general negligence.

■ Appellant argues that the charge of failure to drive on the traveled portion of the roadway is a charge of specific negligence, involving failure to observe the statutory rules of the road, specifically paragraph 2 of § 304.015, RSMo 1959, V.A.M.S., which provides: "Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway * * *." Appellant argues that this provision makes driving off the roadway on the right side of the highway a violation of the rules of the road just as it makes driving to the left of the center of the roadway. The obvious purpose of this statute is to

change the common law of the road that one has a right to travel on either side of the highway when no one is coming in the opposite direction. 7 Am.Jur.2d, Automobiles and Highway Traffic, § 219, p. 768. The statute was not intended to create a duty toward a person in the position of the plaintiff here and affords no basis for a charge of negligence in this situation.

Appellant further argues that the submitted specification of negligence is analogous to that embodied in the rear-end collision doctrine, which, in Jones v. Central States Oil Co., 350 Mo. 91, 164 S.W.2d 914, was held not to involve a charge of general negligence.

Appellant has cited no case in which our courts have adopted such a view. In fact, the cases consider a charge of driving off the roadway one of general negligence, involving the res ipsa loquitur doctrine. Tabler v. Perry, 337 Mo. 154, 85 S.W.2d 471; Murray v. St. Louis Public Service Co., Mo. App., 201 S.W.2d 775. The author of Jones v. Central States Oil Co., Judge Hyde, took such a view of a charge of driving off the roadway in Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001. In that case, he stated (75 S.W.2d 1003):

"It will be noted the plaintiff's only allegation of negligence is that defendant negligently *'operated an automobile in such a manner as to run onto the sidewalk.'* This certainly does not charge specific negligence. It does not charge how defendant was negligent, as, for example, that he either carelessly or purposely drove too fast, or failed to keep a lookout, or drove on the wrong side of the street, or drove across the intersection when he did not have the right of way. It is indeed difficult to see how a more general charge of negligence could be stated. *'In such a manner'* means no more than *'in some careless manner.'*"

There is a reasonable basis for concluding that a submission under the rear-end doctrine does involve a charge of specific negligence, but that a charge of driving off the roadway does not. As pointed out in Jones, the rear-end submission is essentially whether or not the defendant so carelessly guided his vehicle that he drove it against the rear end of plaintiff's automobile. 164 S.W.2d 1. c. 918. Driving off the roadway, by and of itself, has no such specific connotation. In fact, drivers frequently leave the traveled portion of the roadway for valid reasons and with no injurious consequences. As pointed out in Harke, the injurious consequences are produced by some specific act of negligence, such as excessive speed or failure to keep a lookout, not inherently involved in the act of driving off the roadway.

Although appellant insists that he did not intend to rely upon res ipsa loquitur, but intended to charge specific negligence (admittedly in the cases above cited, the plaintiff who had charged running off the roadway was attempting to take advantage of the res ipsa doctrine), such intention cannot convert the issue submitted into one of specific negligence. The instruction did combine specific and general negligence. The trial court properly concluded that the giving of the instruction was error. State ex rel. Burger v. Trimble, 331 Mo. 748, 55 S.W.2d 422, 424 [3]; Ficken v. Hopkins, Mo.Sup., 389 S.W.2d 193, 200 [14]; Gumm v. Herman, Mo.App., 400 S.W.2d 447, 450–451; Harris v. Mound City Yellow Cab Company, Mo.App., 367 S.W.2d 43, 51 [4]; Watson v. Long, Mo.App., 221 S.W.2d 967, 969 [1].

Appellant suggests that the "strict waiver" rule which prevents reliance upon res ipsa by a pleader of specific negligence should no longer be followed, citing an annotation, 2 A.L.R.3rd 1335, "MODERN TRENDS AS TO PLEADING A PARTICULAR CAUSE OF INJURY OR ACT OF NEGLIGENCE AS WAIVING OR BARRING THE RIGHT TO RELY ON RES IPSA LOQUITUR." However, the problem here is not one of waiver, but is one of combining a submission of general and specific negligence as to a particular

act. See Marquardt v. Kansas City Southern Railway Co., Mo.Sup., 358 S.W.2d 49, 54–55 [4, 5, 6], 2 A.L.R.3d 1311.

In view of the error in Instruction No. 5, the trial court's order granting a new trial must be affirmed. We note, however, another ground urged by respondent in support of the new trial order, inasmuch as the question may recur upon a new trial.

The plaintiff offered as an expert witness an engineer who had prepared a plat of the accident scene and who testified as to various matters of sight distance, stopping distances, etc. This witness testified that the time required for the plaintiff to go from the point 6 feet east of the roadway to the point where he was struck was 3½ seconds. The witness testified that this computation was based upon a visit to the scene with the plaintiff; that a young boy then crossed the highway and that plaintiff stated that he crossed at the speed at which that boy traveled; that the boy's crossing time was then recorded at 3½ seconds and the witness used that as the time for plaintiff's crossing.

The defendant objected to the witness's testimony on the grounds that it was based upon an extra-judicial, hearsay statement of plaintiff and was improper. The plaintiff here defends the testimony on the grounds that an actual experiment afforded a better basis for ascertaining the speed of a "jog" or "trot" than an estimate on the part of the witness and on the further grounds that the plaintiff's witnesses all testified that the plaintiff "jogged" or "trotted" across the highway, thereby verifying the witness's testimony.

The speed at which the plaintiff crossed the highway was a vital issue in this case. Although plaintiff and his witnesses testified that plaintiff "jogged" or "trotted" across the highway, defendant had an eyewitness who testified that plaintiff ran across the highway. Such testimony was, of course, consistent with defendant's testimony that plaintiff suddenly appeared in front of his auto before he had any opportunity to avoid the accident.

 The testimony of the plaintiff's witness as to plaintiff's crossing time was not presented as opinion evidence. It purported to establish the actual time. Obviously it must have been based primarily upon plaintiff's extra-judicial, self-serving statement to the witness that he was traveling at the same rate of speed as did the boy in the test. Thus the testimony of the witness was based upon hearsay and was not admissible. Locke Distributing Co. v. Hartford Accident & Indemnity Co., Mo.App., 407 S.W.2d 658, 670–671 [4, 5]. The fact that the witness testified that the boy in the test "jogged" and that the plaintiff subsequently testified that he "jogged" does not eliminate the prejudicial effect of the testimony objected to. This is not a case of the witness's merely repeating what another witness, who also testified, had said, as was the case in Jefferson v. Biggar, Mo., 416 S.W.2d 933, relied upon by plaintiff. Here, the witness testified to matters based upon the out-of-court statement, and this he cannot properly do.

If the witness can show that by observation or otherwise, he can fix reasonably the speed at which a person would "jog" or "trot," there would be no objection to his doing so and basing testimony upon such knowledge. He may not, however, attempt to establish the actual rate of the plaintiff's movement in the manner here followed.

Defendant advanced other matters in support of the trial court's order which we need not consider, inasmuch as the matters involved may not recur on a new trial. Defendant has also urged that plaintiff's humanitarian submission was not supported by the evidence. Whether or not plaintiff will again submit on the humanitarian doctrine on retrial remains to be seen. No good purpose would be served by passing on the question, based upon the evidence on the first trial.

The order of the trial court is affirmed and the cause remanded for a new trial.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

SEILER and STORCKMAN, JJ., and MORGAN, Sp. J., concur.

HENLEY, P. J., not sitting.