Jessie **BUZBEE**, Appellant-Respondent,

v.

**GREYHOUND LINES, INC.**, a Corporation, Respondent,
and
Gerald Wayne Ashby, Administrator of the Estate of Patricia Ashby, Deceased, Appellant.

No. 54876.

Supreme Court of Missouri,
Division No. 1.

May 10, 1971.

John W. Reid, II, of Schnapp, Graham & Reid, Fredericktown, for plaintiff-respondent-appellant, Jessie Buzbee.

George J. Miller, Miller & Buechner, St. Louis, David L. Colson, Farmington, for defendant-respondent Greyhound Lines, Inc.

Warren Grauel, St. Louis, of counsel.

HYDE, Special Commissioner.

Action for $27,000 damages for personal injuries sustained in a collision between an automobile and a bus in which plaintiff was a passenger. Mrs. Ashby, the driver of the automobile, was killed. Plaintiff had verdict and judgment for $20,000 against the administrator of her estate. Verdict and judgment was for defendant Greyhound Lines, Inc. The defendant administrator has appealed from the judgment against him and plaintiff has appealed from the judgment for Greyhound. We affirm.

The collision occurred about 12:55 P.M. on U.S. Highway 67 March 1, 1967 about 1.6 miles north of Farmington, Missouri. The weather was clear and the pavement dry. Highway 67 had two 24-foot concrete pavements divided by a 36-foot grassy median strip. It was 40 feet between the pavements including shoulders. There was a ten-foot gravel shoulder beyond each of the paved double lanes. The bus was going south in the right-hand west southbound lane at 60 miles per hour. Mrs. Ashby was driving north in a 1963 Thunderbird car. She came around a curve and apparently lost control of her car, which first went on to the right-hand east shoulder, then crossed the northbound pavement and on to the grassy median strip. The bus driver first noticed the car when it started to leave the west (inside) north-

bound lane at a 45-degree angle, going on to the grassy median strip. He estimated its speed at that time as 90 to 100 miles per hour. (Plaintiff and another passenger testified to seeing it sooner.) The bus driver said he applied his brakes and swerved to the right shoulder. He said the bus traveled about 180 feet farther before it was struck and its speed had been reduced to 30 miles per hour. He said the bus left tire marks, estimated as 100 to 120 feet. A state highway patrolman who came after the collision did not see these marks. The bus driver estimated the speed of the car when it struck the bus at 60 to 70 miles per hour. Plaintiff, sitting in the front seat of the bus, was thrown through the front windshield of the bus, made unconscious, and her leg was pinned under the bus until a wrecker arrived to free her. The bus driver said when he first saw the Ashby car it was leaving the inside northbound lane half on and half off the northbound pavement. He said there was a ditch in the center of the median and that when the car hit the ditch it turned and came straight across in front of the bus. He said it was in the air with the wheels about a foot off the ground after it struck the ditch. He said the car "spun around, changed ends and came toward the bus sideways."

Plaintiff's submission against the administrator was on excessive speed. Defendant administrator contends excessive speed is not supported by the evidence as an ultimate fact of negligence which caused the collision and that there was no evidence to support a finding that Mrs. Ashby was driving at an excessive rate of speed, claiming the bus driver's evidence is unbelievable. It is argued that because the Ashby car moved laterally across the median strip, instead of continuing on the pavement in a straight line, there must have been an intervening force that caused the car to go into the path of the bus. Newton's axioms or laws of motion are cited to the effect that every body persists in a state of uniform motion in a straight line until compelled by an intervening force to turn. It is said the intervening force might have been some negligent act of Mrs. Ashby or a tire blowout but it was not speed. (A blowout would be wholly speculative under the evidence in this case.) However, administrator recognizes that although speed alone could not have caused the car to travel into the path of the bus, speed could have prevented Mrs. Ashby from avoiding the collision and that the proper test of speed as the proximate cause is whether or not it prevents the driver from avoiding collision, see Miller v. Fink, Mo.App., 387 S.W.2d 173; Bauman v. Conrad, Mo.App., 342 S.W.2d 284; Osborn v. McBride, Mo.Sup., 400 S.W.2d 185; see also Davis v. Werremeyer, Mo. Sup., 377 S.W.2d 319; Hinds v. Kircher, Mo.Sup., 379 S.W.2d 607.

■ There was evidence to show that after Mrs. Ashby came around the curve her car went on to the right (northbound) gravel shoulder leaving tire marks for 120 feet, then angled 90 feet across both northbound lanes on to the grass median, went 90 feet across the median to the southbound lanes and angled across them for 60 feet before striking the front of the bus which was partly on the pavement and partly on the southbound gravel shoulder. Administrator questions the qualifications of the bus driver to estimate the speed of the Ashby car, arguing inconsistencies in his testimony as to distances between the bus and the car when he first saw it. However, the bus driver had been driving busses on highways for 26 years and it was estimated he had driven about two million miles as a bus driver, observing automobile traffic. We hold that his testimony as to the speed of the Ashby car was properly received, and its credibility was for the jury to determine. Our view is that the evidence is sufficient to show excessive speed preventing Mrs. Ashby from avoiding the collision; and that plaintiff made a submissible case on this issue.

■ Defendant administrator claims error in the cross-examination by plaintiff of

Greyhound's expert witness Bilhorn who made tests to determine the stopping distance of a bus of the same model as the one in the collision. The bus driver had made a signed written report, offered in evidence by plaintiff and used to cross-examine Bilhorn. It contained the statement: "This car was traveling at a great rate of speed. I started applying my brakes." Plaintiff read this statement and asked Bilhorn: "Did you use that in your computation?" The administrator's objection that this was a conclusion of the bus driver was overruled and Bilhorn answered: "No." Another statement, from a diagram on the bus driver's report, was read: "Vehicle No. 2 (Ashby car) went onto the shoulder of the northbound lane, evidently due to excessive rate of speed." The administrator's objection was "Object to what, what that report shows as to defendant Ashby." Although administrator's objection did not so specify, apparently it was also directed to the statement about speed. Plaintiff's counsel offered to withdraw this reference to speed and have the jury instructed to disregard it but the court overruled the objection. As to such a general reference to speed, we said in State ex rel. Shaw Transfer Co. v. Trimble, Mo. Sup., 250 S.W. 384, 387, of a plaintiff's testimony: "Her testimony that the cab was 'going very fast' was clearly admissible under the ruling in State v. Watson, 216 Mo. 420, 115 S.W. 1011." See also annotation 92 A.L.R.2d 1393, citing many cases holding such testimony admissible and others rejecting it as too indefinite. Since the bus driver had testified to a definite speed of the Ashby car from the time he saw it until the collision, we do not consider these general references to speed in his report to be prejudicial error.

■ As to the diagram showing the Ashby car went on to the east shoulder of the northbound lane, it is true that the bus driver said he did not see it there. However, after the collision, he did go over to the east shoulder and found skid marks there. Furthermore, administrator's own evidence showed the Ashby car went on to the east shoulder of the northbound lane. Administrator's witness, Ransom, representing his insurance company, went to the scene of the collision (an hour to an hour and a half afterwards) took photographs and made measurements. He said he found 120 feet of tire marks made by the Ashby car on the gravel shoulder, then tire marks diagonally across the road for 90 feet and made a plat to show this course. His observations and measurements agreed with those stated by a state highway patrolman who arrived on the scene soon after the collision. In view of this testimony of administrator's witness, we hold there was no prejudicial error against him in receiving in evidence the diagram on the bus driver's report showing the Ashby car went on to the east (right) shoulder of the northbound lane before it crossed the northbound lanes and the median strip to collide with the bus. This was really not a controverted issue.

■ Plaintiff claims error in permitting Bilhorn to testify to the actual stopping distance of the bus and concerning a test conducted by him with a bus of the same model driven by an employee of Greyhound who did not testify at the trial. Plaintiff seeks a new trial against Greyhound on her claim submitted on failure to keep a careful lookout. Plaintiff had testimony that the bus driver did not apply his brakes before the collision. Administrator had the testimony of an expert witness, an engineer, that the bus going 60 miles per hour could be stopped in 318 feet with safety to the passengers; and in 278 feet without regard to their safety, including reaction time. He also said the speed of the bus could be reduced from 60 miles per hour to 30 miles per hour in 150 feet with safety to the passengers. However, his tests had been made with automobiles and trucks and he had made none with busses.

Greyhound employed Bilhorn, an experienced engineer, to make tests with a same model bus driven by Greyhound's mechanic

foreman with brakes first tested for performance prescribed by Interstate Commerce Commission rule. Tests were made under Bilhorn's direction with the driver directed to apply the brakes at a checkpoint and distances measured. The brakes were applied in tests with various degrees of intensity. Bilhorn was present on the bus during the test runs and directed, controlled and supervised the tests. His testimony based on these tests was that the bus going 60 miles per hour could be stopped with reasonable safety to passengers in 386 feet to 426 feet including ¾ second reaction time. The bus could be stopped in a shorter distance (he said 284 feet) but that would likely cause injury to passengers.

Plaintiff relies on Skiles v. Schlake, Mo.Sup., 421 S.W.2d 244. In Skiles plaintiff claimed he was struck by a car as he "trotted" or "jogged" across a highway. He had a verdict for damages but the trial court sustained defendant's motion for a new trial, which we affirmed; but we also found it necessary to determine another contention raised because "the speed at which the plaintiff crossed the highway was a vital issue." Defendant claimed plaintiff ran suddenly in front of his car. A plaintiff's witness "purported to establish the actual time" of plaintiff to cross the highway jogging but this was based "upon plaintiff's extra-judicial, self-serving statement to the witness that he was traveling at the same rate of speed as did the boy in the test" made by the witness. We held "the testimony of the witness was based upon hearsay and was not admissible" because it was "based upon the out-of-court statement" of the plaintiff. However, we further said: "If the witness can show that by observation or otherwise, he can fix reasonably the speed at which a person would 'jog' or 'trot,' there would be no objection to his doing so and basing testimony upon such knowledge." That is exactly what Bilhorn did in this case. He determined the stopping distance of the same model bus going 60 miles per hour by his own observation riding on the bus used

and by measurements made by him and not on any statement of the Greyhound employee who drove the bus. Therefore his testimony as to the stopping distance was properly admissible and it was not necessary for the Greyhound employee who made these stopping tests under his direction to testify to make Bilhorn's testimony admissible. Likewise, it was proper for Bilhorn to give his opinion, as an experienced expert, as to the stopping distance of the bus involved in the collision. See Baker v. Kansas City Public Service Co., 353 Mo. 625, 183 S.W.2d 873, 875 and cases cited; 2 Wigmore Evidence, 3rd Ed., § 445, § 561; Yocum v. Kansas City Public Service Co., Mo.Sup., 349 S.W.2d 860.

Administrator's final contention is that the verdict was grossly excessive and that a remittitur of not less than $12,500 should be required if the judgment is not reversed. Administrator relies on Hornberger v. St. Louis Public Service Co., Mo.Sup., 353 S.W.2d 635, in which the trial court ordered a $35,000 award reduced by half to $17,500; and we affirmed, saying however that we should not further reduce the amount of the judgment. Administrator claims the injuries in the Hornberger case were more extensive and serious; and says plaintiff in that case was 57 years old while plaintiff herein was 76. In Hornberger, although there were ruptured intervertebral discs there was no broken pelvic bone. Administrator claims plaintiff's condition is due to other disabilities plaintiff had before her injury in the collision. It is argued that plaintiff had an old fracture of the tibia and fibula, a history of nausea, indigestion and chronic gastritis, hypertrophic arthritis, kyphosis, a stoop deformity of the back and shoulders, osteoporosis and scoliosis (curvature) of the lumbar spine. Administrator claims plaintiff's previous arthritis could cause the pain she suffers. However, "It is well established that an injury may light up a dormant or quiescent arthritic condition." See Harper v. Department of Labor and Industries, 46 Wash.2d 404, 281 P.2d 859,

860. See also Pitz v. Motor Freight, Inc., 115 Ohio App. 280, 184 N.E.2d 915, 920, in which the approved award was $50,000 to a 75-year-old woman, who apparently had a more serious pelvic injury than in this case, because of failure to heal. See other cases of aggravated arthritic condition, 1970 Supplement, Am.Jur. Proof of Facts 35–42. Plaintiff did not have rheumatoid arthritis.

" 'There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own particular facts. Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the trial court has approved the verdict in question.' " Hunter v. St. Louis Southwestern Ry. Co., Mo. Sup., 315 S.W.2d 689, 697. The Hornberger case was decided in 1962; and decline in the purchasing power of the dollar since then must be recognized.

Plaintiff had been taking care of herself, living in her own house, doing her own housework, often making trips with friends and visiting her son in Ohio. Her injuries were shown to be a separation fracture to the right superior pelvic ramus, which had healed, a 10% compression fracture of the second lumbar vertebra, a 38% compression fracture of the twelfth thoracic vertebra. These injuries also compressed the intervertebral discs. Plaintiff had numerous lacerations of her left leg, knee and foot which had to be sewed up. Her medical and hospital expense has been $1,659.-10. She was hospitalized for eight weeks. Her testimony was that she has constant pain, has difficulty sleeping, is not able to do much housework, cannot sit in one spot more than 15 minutes and so cannot attend church and visit like she previously did. Defendant's contentions are mainly based on testimony of a doctor, who examined plaintiff almost two years after her injury. His opinion was that the condition of plaintiff's vertebra was not due to fracture but to kyphosis and osteoporosis, loss of calcium and normal wear and tear of age. Plaintiff's doctors' testimony as to these fractures was based on X rays taken soon after her injury. We must consider that the jury believed the testimony of plaintiff and her doctor and that the trial judge found no reason to require remittitur. Accepting plaintiff's evidence as true, we do not hold this verdict excessive.

The judgment for Greyhound and against the administrator is affirmed.

PER CURIAM:

The foregoing opinion by HYDE, Sp. C., is adoptd as the opinion of the court.

All of the Judges concur.